IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 119,720

STATE OF KANSAS,
*Appellee*,

v.

RITCHIE D. RANDLE,
*Appellant.*

SYLLABUS BY THE COURT

1.

An appellate court reviews instructional error claims in multiple steps. First, it decides whether the issue was properly preserved. Second, it considers whether the instruction was legally and factually appropriate. It exercises unlimited review of these questions. And when the reviewing court finds error, it considers whether that error is reversible. If the defendant properly requested the instruction in district court, the State must establish there is no reasonable probability the error's absence would have changed the verdict. The appellate court considers the entire record de novo when deciding whether the State met this burden.

2.

An appellate court generally reviews a trial court's admission or exclusion of hearsay statements for an abuse of discretion. But when the adequacy of the legal basis for the trial court's evidentiary ruling is challenged, the appellate court reviews that ruling de novo.

1

3.

Hearsay is evidence of a statement made by someone other than a testifying witness at a hearing that is offered to prove the truth of the matter stated. Hearsay is not admissible unless it fits within one or more of the statutory exceptions in K.S.A. 2019 Supp. 60-460.

4.

An appellate court reviews the admission of photographic evidence by first determining whether the challenged photos were relevant. If they are relevant, and a challenging party's objection is based on a claim that the photographs were overly repetitious, gruesome, or inflammatory, i.e., unduly prejudicial, the standard of review is abuse of discretion. The burden of showing an abuse of discretion rests with the party asserting the error.

5.

An appellate court applies an abuse of discretion standard of review to determining whether a sentencing court erred in concluding that a mitigating factor constituted a substantial and compelling reason to depart in a particular case.

6.

Mitigating factors that may justify departure in one case may not justify a departure in other cases.

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed May 1, 2020. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Lesley A. Isherwood*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

BILES, J.:  A jury convicted Ritchie D. Randle of first-degree murder and criminal discharge of a firearm. In this direct appeal, Randle advances various trial error claims involving jury instructions, hearsay evidence, and the admission into evidence of graphic photographs and crime scene video. He also challenges the district court's denial of his motion for departure sentencing. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2017, Troy Rodriguez was in his Wichita apartment when he heard gunshots. He went outside and saw a man at the bottom of a stairwell running away from the apartment complex. Rodriguez discovered an apartment with its door and windows shot out. Timothy Golden was lying on the kitchen floor in "a pool of blood." Police located 21 shell casings of three different calibers.

Surveillance videos showed three young men, with their faces partially covered and handguns seemingly in their pockets, approach and later flee from the apartment's immediate vicinity. One man could be seen with a GPS monitoring device on his ankle. The location data from that device revealed this person was Randle. The other two were later identified as Larry Triplett III and Dakahri Saunders.

Police collected a small piece of black fabric that later revealed a DNA profile with mixtures of at least three people. At trial, a DNA technician testified Randle could not be excluded as a major contributor to this profile.

A jury convicted Randle of first-degree premeditated murder and criminal discharge of a firearm. The district court sentenced him to life imprisonment without possibility of parole for 50 years for the murder with a 13-month consecutive term for the firearm conviction.

On appeal, Randle claims the district court erred by: (1) refusing to instruct the jury on unintentional but reckless second-degree murder as a lesser included offense of first-degree murder; (2) allowing hearsay statements into evidence; (3) admitting graphic photographs and video into evidence; and (4) denying a sentencing departure.

Jurisdiction is proper. See K.S.A. 2019 Supp. 22-3601(b) (listing criminal cases permitted to be directly taken to Supreme Court); K.S.A. 60-2101(b) (Supreme Court jurisdiction over direct appeals governed by K.S.A. 2019 Supp. 22-3601).

THE LESSER INCLUDED OFFENSE INSTRUCTION

Randle argues the district court should have given his requested jury instruction on unintentional but reckless second-degree murder as a lesser included offense of first-degree premeditated murder. Some background is helpful.

*Additional facts*

At trial, the State introduced a recorded jailhouse phone call between Randle and two women as evidence over a defense objection. He repeatedly mentioned the name "Dakahri," who he claimed killed Golden. When one woman asked Randle what he had done at the apartment, he answered he "shot."

4

A crime scene investigator testified about the measures taken to track the trajectories of the bullets fired into the apartment. She said "many" of the "defects" caused by bullet strikes focused on the wall behind the couch. A trajectory analysis indicated those shots came in from the front window. She noted there was no indication shots were fired straight back into the apartment; rather, they were fired from both corners at the front of the apartment at angles away from the shooters, establishing a crossfire pattern.

The photographic evidence shows the window curtains partially open and the Venetian-style blinds down with some slats tilted open. The window glass and blinds were badly damaged by the gunfire.

Randle did not testify or offer evidence. Defense counsel requested a lesser included offense instruction on unintentional but reckless second-degree murder. He argued the State failed to show Randle knew Golden was inside. The court denied the requested instruction as not factually appropriate. It noted: (1) there was no testimony demonstrating Randle or his codefendants did not intend to kill Golden; (2) the recorded jail call showed the opposite—Saunders shot Golden, and Randle shot too; (3) three armed men fired several shots at Golden who was unarmed; and (4) the shooting occurred from angles creating a crossfire pattern. Based on this, the district court found no evidence supporting a claim Randle unintentionally but recklessly killed Golden.

The court instructed the jury on premeditated first-degree murder and intentional second-degree murder as a lesser included offense.

*Standard of review*

An appellate court reviews instructional error claims in multiple steps. First, it decides whether the issue was properly preserved. Second, it considers whether the instruction was legally and factually appropriate. It exercises unlimited review of these questions. And when the reviewing court finds error, it considers whether that error is reversible. If the defendant properly requested the instruction in district court, as Randle did, the State must establish there is no reasonable probability the absence of the error would have changed the verdict. The appellate court considers the entire record de novo when deciding whether the State meets this burden. *State v. Gentry*, 310 Kan. 715, 720, 449 P.3d 429 (2019). See generally *State v. Ward*, 292 Kan. 541, 569-70, 256 P.3d 801 (2011) (reversibility inquiry's test and degree of certainty in detail).

*Discussion*

Randle properly preserved this issue by timely requesting the instruction. And the requested instruction was legally appropriate. See *Gentry*, 310 Kan. at 721 (unintentional second-degree murder is a lesser included offense of first-degree premeditated murder). Our questions are whether the requested instruction was factually appropriate, and if so, whether the district court's refusal to give it was harmless error.

At the outset, we need to do some light housekeeping. The State contends we should view the evidence in the light most favorable to the prosecution when making the factual appropriateness inquiry. It relies on *State v. Fisher*, 304 Kan. 242, 258, 373 P.3d 781 (2016), which stated "[i]f, after a review of all the evidence viewed *in the light most favorable to the prosecution*, we are convinced that a rational factfinder could have found the defendant guilty of the lesser crime, failure to give the instruction is error." (Emphasis added.)

6

The State attempts to exploit this statement to its advantage, even though the *Fisher* court cited *State v. Armstrong*, 299 Kan. 405, 433, 324 P.3d 1052 (2014), which in turn referred to *State v. Plummer*, 295 Kan. 156, 161-62, 283 P.3d 202 (2012). And the *Plummer* court actually held,

"[A] district court does not err in refusing to give a lesser included offense instruction on a crime which is unsupported by the evidence in that particular case. Such an inquiry is closely akin to the sufficiency of the evidence review frequently performed by appellate courts in criminal cases where '"the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt."' *Of course, where the defendant has requested the lesser included offense instruction, the evidence should be viewed in the light most favorable to the defendant.* [Citations omitted.]" (Emphasis added.) 295 Kan. at 161-62.

The misstatement in *Fisher* is simply that. It is unsupported by our caselaw and to that extent must be disapproved. Indeed, the *Fisher* court itself properly recited the rule elsewhere in its opinion when setting out the framework for analyzing jury instruction claims. And it did so just a few sentences before using the errant language we now correct. See 304 Kan. at 257 (quoting *State v. Woods*, 301 Kan. 852, 876, 348 P.3d 583 [2015]). As noted in *Plummer* and its progeny, when the defendant requests a lesser included offense instruction, an appellate court reviews the evidence in the light most favorable to the defendant.

As for the merits, Randle advances two reasons why he believes the instruction was factually appropriate. First, he claims he could not have known Golden was inside when the trio started shooting because of the positioning of the window curtains and blinds. This is based on admittedly ambiguous photographic evidence depicting the lines

7

of sight into the apartment through the damaged window. Second, Randle points out the jury had to find he acted recklessly in convicting him of criminal discharge of a firearm.

After studying the parties' back and forth on these points, we concede some uncertainty with simply dismissing Randle's arguments, especially since it is possible reasonable people might disagree about what the photographs show. Accordingly, we will assume without deciding error in failing to give the requested instruction and transition to a reversibility analysis. See *State v. Solis*, 305 Kan. 55, 67, 378 P.3d 532 (2016) ("[A]ny debate over the factual appropriateness of lesser included offense instructions involving reckless or unintentional conduct would be an academic exercise."). We hold this assumed error was harmless.

First, overwhelming evidence bolsters Randle's first-degree premeditated murder conviction. Factors considered to decide whether evidence supports an inference of premeditation include:

> """(1) [T]he nature of the weapon used; (2) lack of provocation; (3) the defendant's conduct before and after the killing; (4) threats and declarations of the defendant before and during the occurrence; and (5) the dealing of lethal blows after the deceased was felled and rendered helpless.[Citations omitted.]""" *State v. Louis*, 305 Kan. 453, 459, 384 P.3d 1 (2016).

In Randle's case, his premeditated murder conviction is supported by: (1) the apartment complex surveillance videos showing three men with their faces partially covered and handguns in their pockets approaching and fleeing from the immediate vicinity of the crime scene, demonstrating the incident was planned; (2) the 21 shell casings police found, suggesting the guns were not fired by accident; and (3) the bullet strikes focused on the wall behind the couch and the trajectory analysis established a crossfire pattern, indicating the shooting was not random. And Randle's participation was

8

established by the monitoring ankle bracelet data, the crime scene DNA evidence, and Randle's jailhouse admission that he "shot." Given all of this, there is no reasonable probability the trial's outcome would have changed had the requested lesser included offense instruction been given.

Second, as the State argues, the given instructions provided the jury with a choice between first-degree premeditated murder and second-degree intentional murder. And the jury convicted Randle of the more severe crime that required a premeditation finding. *Louis*, 305 Kan. at 459 ("'Premeditation means to have thought the matter over beforehand and does not necessarily mean an act is planned, contrived, or schemed beforehand; rather, premeditation indicates a time of reflection or deliberation.'").

In *State v. Carter*, 305 Kan. 139, 380 P.3d 189 (2016), the jury received instructions on first-degree premeditated murder and intentional second-degree murder. The *Carter* court held "[t]he fact that Carter's jury found him guilty of premeditated first-degree murder means it never reached intentional second-degree murder and, likewise, would not have reached reckless second-degree murder. Reversal for the judge's failure to instruct *sua sponte* on reckless second-degree murder is not required." 305 Kan. at 164; see also *Gentry*, 310 Kan. at 730 ("There is no question that if the jury had unanimously found Gentry guilty of first-degree premeditated murder, we would find the instructional error [refusing a requested instruction on unintentional but reckless second-degree murder] harmless under these facts."); *State v. Barrett*, 309 Kan. 1029, 1039, 442 P.3d 492 (2019) (the skip rule "is not an automatic harmlessness pass," but "the logical deduction inherent in the skip rule is one factor, among many, to be considered as part of the applicable harmlessness test").

We hold the assumed error in not giving the requested instruction was harmless.

9

Randle claims the district court erred by allowing the State to introduce two hearsay statements, neither of which, he argues, fit a hearsay rule exception under K.S.A. 2019 Supp. 60-460. There are two statements at issue. The first was when Erin Rogers, Dakahri Saunders' mother, testified Saunders asked her "where [she] put the gun." The second was when Wichita Police Detective Michelle Tennyson testified Jonavon Phillips, the victim's best friend, told her that Triplett called Phillips and "ask[ed] him where [Golden] is at or where [Golden] lives." Again, some background helps.

*Additional facts*

*(1) Rogers testified Saunders asked her "where [she] put the gun."*

Saunders lived with his mother. And the Sunday after the shooting, Rogers found a handgun on her couch that she had never seen before. She contacted Saunders and told him to get it out of her house. Saunders returned home after his mother had gone to bed. He woke her up and asked "where [she] put the gun." She told him where he could find it.

Before trial, defense counsel filed a motion in limine asking that any statements sought for admission as those made by a coconspirator comply with K.S.A. 2019 Supp. 60-460(i)(2) ("As against a party, a statement which would be admissible if made by the declarant at the hearing if . . . the party and the declarant were participating in a plan to commit a crime . . . and the statement was relevant to the plan or its subject matter and was made while the plan was in existence and before its complete execution or other termination."). The district court had a pretrial hearing on the motion.

The State argued Saunders' question about the gun's location was in the form of an inquiry, so it was not hearsay. Defense counsel countered that regardless of its inquisitive

nature, the coconspirator exception did not apply since the words were uttered after the shooting and murder were completed. The court took the matter under advisement.

The district court ruled shortly before Rogers was to testify. The State clarified that it intended for the question to establish a connection between Saunders and the gun. The court concluded the testimony was not hearsay because it did not contain a factual assertion that could be true or false. It noted, "Statements used circumstantially to give rise to an indirect inference but not to prove the matter asserted are not hearsay." The trial resumed and counsel lodged a contemporaneous objection that was overruled. See K.S.A. 60-404 (for erroneous admission of evidence, timely objection is required).

*(2) Detective Tennyson testifying Phillips told her Triplett "ask[ed] him where [Golden] is at or where [Golden] lives."*

At trial, the State advised the court it wanted to admit Phillips' statement about a question one of the codefendants, Triplett, asked Phillips during a phone conversation a few hours before the shooting. Triplett had asked Phillips if he knew where Golden lived, to which Phillips responded he did not. The court found Triplett's inquiry to Phillips was not hearsay, referring to its previous ruling on Saunders' out-of-court question to his mother.

But when the State asked about the conversation at trial, Phillips denied it occurred. The State then called Detective Tennyson, who testified Phillips told her Triplett called him and "ask[ed] him where [Golden] is at or where [Golden] lives." Defense counsel timely objected on hearsay grounds. The court again ruled the statement was not hearsay.

11

*Standard of review*

An appellate court generally reviews a trial court's admission or exclusion of hearsay statements for an abuse of discretion. But when the adequacy of the legal basis of the court's evidentiary ruling is challenged, an appellate court reviews that ruling de novo. *State v. Bowen*, 299 Kan. 339, 349, 323 P.3d 853 (2014); *State v. Cosby*, 293 Kan. 121, Syl. ¶ 1, 262 P.3d 285 (2011); see also *State v. Race*, 293 Kan. 69, 75-76, 259 P.3d 707 (2011).

*Discussion*

Hearsay is "evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated." It is inadmissible unless it fits within one or more of the statutory exceptions listed in K.S.A. 2019 Supp. 60-460. The theory behind the rule is that when a statement is introduced as evidence for the truth of the matter asserted, the declarant's credibility is the basis for its reliability, and the declarant must be subject to cross-examination. *Race*, 293 Kan. at 76. If an out-of-court statement is offered for some other reason, it is not hearsay. For instance, a statement offered to prove merely that the statement was made is not hearsay. 293 Kan. 69, Syl. ¶ 1.

The State argues it offered Saunders' question to his mother to establish a connection between Saunders and the gun—not to prove the gun's location. And by producing Phillips' statement through the detective, the State sought to introduce Triplett's question about Golden's whereabouts to show Triplett was looking for him the day of the murder. But Randle insists both were inadmissible hearsay because they were offered to show the truth of the matter asserted in them—"the existence of the gun and

12

Saunders' possession of it" and the fact "Phillips had received a phone call from Triplett in which Triplett had asked where he could find Golden."

The statutory term "'[s]tatement' means not only an oral or written expression but also nonverbal conduct of a person intended by him or her as a substitute for words in expressing the matter stated." K.S.A. 60-459(a). The expression's form does not matter; a question-like expression can be a statement under K.S.A. 60-459(a). See *Cosby*, 293 Kan. at 127-28 (holding defendant's question to police officer was an out-of-court statement subject to hearsay rules). So even if Saunders' out-of-court inquiry is construed to infer he possessed a gun that was in the house, it was not hearsay because the State did not offer it to prove that. The evidence in support of the gun's existence was provided by Rogers' testimony that she saw it in the house. And by presenting Saunders' inquiry, the State simply sought to establish the gun had some connection with Saunders because he was looking for it. A statement is not hearsay if it is "used circumstantially as giving rise to an indirect inference but not as an assertion to prove the matter asserted." *Boldridge v. State*, 289 Kan. 618, 634, 215 P.3d 585 (2009).

As for Phillips' out-of-court statement, it presents a double hearsay concern. The first layer, Triplett's out-of-court inquiry to Phillips, was not hearsay because it too was only used circumstantially to raise the inference that Triplett was looking for Golden. The second layer arises from the way the State got Phillips' account of the inquiry into evidence. At trial, Phillips was not the person who testified about this—Detective Tennyson was. And the State offered Tennyson's testimony about the exchange to prove the truth of the matter asserted, i.e., that Triplett asked Phillips about the victim's whereabouts. This is classic hearsay.

But K.S.A. 2019 Supp. 60-460(a) allows hearsay to be admitted if it is "[a] statement previously made by a person who is present at the hearing and available for

13

cross-examination with respect to the statement and its subject matter, provided the statement would be admissible if made by declarant while testifying as a witness." And Phillips was present at trial and available for cross-examination. In fact, Phillips denied making the statement when asked about it at trial. The district court did not err by admitting Tennyson's testimony about the conversation.

We hold the district court did not err by admitting the two out-of-court statements.

THE PHOTOGRAPHIC AND VIDEO EVIDENCE

Before trial, defense counsel filed a motion to limit photographic evidence, so that any gruesome photographs were not unduly repetitious or cumulative and had probative value greater than the risk for undue prejudice. The district court allowed eight autopsy photos, a video, and two photos investigators took of Randle at the time of questioning.

*Standard of review*

When reviewing a trial court's admission of photographic evidence, an appellate court first determines whether that evidence was relevant. If so, the appellate court reviews for abuse of discretion whether the evidence was overly repetitious, gruesome, or inflammatory, i.e., unduly prejudicial. The party asserting the error bears the burden of showing an abuse of discretion. *State v. Williams*, 308 Kan. 1320, 1333, 429 P.3d 201 (2018).

*Autopsy photos*

There were 128 photographs from the autopsy. Of those, the State offered eight as trial evidence. The district court agreed to admit them over defense objections. The court reasoned the photos were relevant, were not too gruesome, repetitious, or unduly

14

prejudicial, and would help the jury understand the medical testimony. Randle claims the court erred by not excluding the autopsy photos. He argues the coroner's black-and-white diagram could have communicated the same information to the jury in a more reasonable, less inflammatory manner.

Photographic evidence is relevant and generally admissible because it has a reasonable tendency to prove material facts. But admitting gruesome evidence simply to inflame the jury is error. *State v. Tague*, 296 Kan. 993, 1002, 298 P.3d 273 (2013). Autopsy photos are inherently gruesome, but they assist a pathologist in explaining the injuries and cause of death. In murder cases, admitting such evidence is rarely held to be an abuse of discretion. *Williams*, 308 Kan. at 1333-34. "Gruesome crimes result in gruesome photographs." *State v. Green*, 274 Kan. 145, 148, 48 P.3d 1276 (2002).

In Randle's case, the court reviewed all 128 autopsy photographs before admitting the eight. It noted those eight did not "include the internal examination . . . course of travel of bullets through the body, [and] organs that have been removed." See *State v. Pennington*, 276 Kan. 841, 850, 80 P.3d 44 (2003) (discussing cases in which the court held trial courts abused their discretion by admitting unduly gruesome and repetitive photographs; noting "[t]he common theme in these cases is that the photographs graphically displayed the victim's organs after the body was cut open during the autopsy"). Only a few of the available photos were selected to explain the nature and extent of the fatal injuries, their location on the body, and the coroner's opinions based on the injuries depicted. And this evidence corroborated the corner's testimony in a way the black-and-white diagram could not. See *Williams*, 308 Kan. at 1332-35.

Randle also argues the admitted photos were unnecessary because he did not contest Golden's injuries, but this argument is unavailing. The prosecution had the burden to prove beyond a reasonable doubt all elements of the crime charged, including the fact

and manner of the death and its violent nature, even if those limited aspects of the case were undisputed. 308 Kan. at 1334. No error occurred.

*The video*

Defense counsel also objected to a six-minute crime scene video. It shows Golden's body as a police officer checked for a pulse, as well as pooled, smeared, and spattered blood around the body. No gunshot wounds were visible. Emergency medical personnel can be seen arriving.

The district court found the video relevant. It noted the video did not show the victim's face or open wounds, was not overly gruesome, and uniquely showed the apartment layout, the apartment complex, and the crime scene. The court ruled its probative value outweighed its prejudicial effect.

The State raises a preservation concern. It claims defense counsel simply said at trial he would like to "renew my antemortem objection." In the State's view that specifically referred to the defense's "Motion to Suppress Ante-Mortem Photographs of the Decedent," which differed from the motion to limit photographic evidence that included the video.

At trial, just before the State introduced the video, counsel promptly objected to its admission, although he misspoke as to the specific grounds on which he was objecting. But in this instance the court knew the issue associated with the video and had the opportunity to rule on it. See *State v. Spagnola*, 295 Kan. 1098, 1103, 289 P.3d 68 (2012) (noting the rationale underlying the contemporaneous objection rule is that stating objection and grounds allows a district court to preclude improper evidence from affecting the decision). We hold the purposes of the contemporaneous objection rule

16

under K.S.A. 60-404 were fulfilled under these circumstances, and the issue was preserved for appellate review.

Moving to the merits, Randle argues the video was of minimal probative value because any purpose for it was already covered by the autopsy photos and those of the apartment interior. He insists the video was unduly prejudicial because it was merely repetitious and showed large amounts of blood. But the video was only six minutes and eight seconds long; and it allowed the jury to view the crime scene, the apartment complex layout, and the path the shooters traveled as they approached Golden's residence. It also provided a panoramic view of the scene showing its dimensions and size in a manner not available through the still photographs.

In *State v. McCaslin*, 291 Kan. 697, 724-26, 245 P.3d 1030 (2011), the court rejected a similar argument that an eight-minute fire department video was irrelevant, cumulative, and more prejudicial than probative. The court held it was relevant because it helped the jury understand the facts and allowed it to see the fire damage and disarray inside the house, even though photographic evidence was introduced as well. The court noted the victim's burnt body was briefly visible, but not unduly prejudicial. It also stated that although some of the same information was introduced through other evidence, the video had other relevant information. 291 Kan. at 726; see also *State v. Parker*, 277 Kan. 838, 848, 89 P.3d 622 (2004) (district court properly admitted videotape of crime scene in murder prosecution as it was useful for acquainting the jurors with the crime scene); *State v. Groschang*, 272 Kan. 652, 667-68, 36 P.3d 231 (2001) (district court did not err when admitting the video evidence showing "the victim's head, blood splatters, and brain matter").

We hold the district court did not err by admitting the video.

17

*Photographs taken of Randle while in custody*

Two photographs were introduced showing Randle standing and facing the camera with his back to a wall. Both were taken while he was in custody, but he was in street clothes and without handcuffs or other restraints. The first, Exhibit 66, shows Randle's full body length. The second, Exhibit 67, shows him from his head to waist. Counsel objected to Exhibit 67, arguing it was duplicitous and had no independent value. The district court admitted both photos.

These photos are virtually identical, but Exhibit 67 gave the jury a closer view of Randle's face and upper body. The State argues these images "played an important role in this case" because it also produced the surveillance video, implying the jury could compare his appearance at the time of the crime with the men shown in the surveillance video.

Randle does not challenge the exhibits' relevancy, so the issue is limited to prejudice. We hold this evidence was not unduly prejudicial, since both photographs depicted Randle's features differently and, therefore, were not duplicitous and had an independent value. See *State v. Tague*, 296 Kan. 993, 1002, 298 P.3d 273 (2013).

RANDLE'S MOTION FOR A DEPARTURE SENTENCE

Before sentencing, Randle requested an unspecified "dispositional/durational departure" sentence, advancing four mitigating factors: (1) his family support; (2) the existence of community-based programs that would aid his rehabilitation; (3) his intoxication at the time of the crime; and (4) his lesser role in the crime. The district court denied the motion by finding there were "no substantial and compelling bases." See K.S.A. 2019 Supp. 21-6620 (providing hard 25 life sentence may be imposed for

premeditated murder in lieu of standard hard 50 sentence if sentencing judge finds substantial and compelling reasons to impose the lesser sentence); K.S.A. 2019 Supp. 21-6815(a) (providing sentencing judge to impose presumptive sentence for grid crimes unless judge finds substantial and compelling reasons to impose departure sentence).

On appeal, Randle claims the court erred because the mitigating factors listed in his motion "have previously been held to be substantial and compelling reasons to support a departure sentence, the district court acted arbitrarily in refusing to grant a departure sentence in the instant case." But this court has long recognized "that mitigating factors which may in one case justify departure may not in all cases justify a departure." *State v. Hines*, 296 Kan. 608, 620, 294 P.3d 270 (2013).

Randle fails to show an abuse of discretion, i.e., that no reasonable person would agree with the district court's assessment of whether the mitigating circumstances were substantial and compelling. We hold the court did not err in denying the departure motion.

Affirmed.

PATRICK D. MCANANY, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge McAnany was appointed to hear case No. 119,720 under the authority vested in the Supreme Court by K.S.A. 20-2616 to fill the vacancy on the court by the retirement of Chief Justice Lawton R. Nuss.