NOT DESIGNATED FOR PUBLICATION

No. 124,399

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JERMAINE LAMONT THOMAS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; RENE S. YOUNG, judge. Opinion filed May 27, 2022. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Michael R. Serra*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., POWELL and WARNER, JJ.

PER CURIAM: Jermaine Lamont Thomas was originally charged in two separate cases with, among other counts, aggravated battery, aggravated robbery, domestic battery, and aggravated intimidation of a witness. Subsequently, four more cases were brought against Thomas for additional charges. During Thomas' incarceration while awaiting trial, he apparently abused his phone and mail privileges by repeatedly contacting the victim and attempting to pressure her into not cooperating with the State.

Ultimately, as part of a plea agreement with the State resolving all his cases, Thomas pled no contest to aggravated robbery, aggravated intimidation of a witness,

1

criminal threat, possession of methamphetamine, misdemeanor domestic battery, and misdemeanor theft, all contained in a single amended complaint. In exchange for Thomas' plea, the State agreed to recommend a durational departure to 68 months' imprisonment and concurrent sentences. At sentencing, however, while the district court agreed to the durational departure, without explanation, it ran Thomas' sentence for aggravated intimidation of a witness consecutive to his other sentences, resulting in an 86-month prison sentence.

Thomas now appeals his sentences, claiming the district court abused its discretion by not running his sentences concurrent pursuant to the plea agreement and by not explaining why. However, we see no abuse of discretion because the district court was not bound by the plea agreement nor was it required to explain the consecutive sentence it imposed. Thus, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On November 5, 2019, the State charged Thomas in case number 19CR1009 with one count each of aggravated battery, aggravated robbery, and felon in possession of a firearm. The district court entered an order prohibiting contact between Thomas and five named victims and witnesses in the case.

The State also charged Thomas in case number 19CR1005 with one count each of aggravated burglary, aggravated domestic battery, criminal damage to property, criminal trespass, domestic battery, and theft, and two counts of aggravated intimidation of a witness or victim.

The State brought additional charges of criminal threat and possession of a controlled substance in cases 19CR1085 and 19CR1018, respectively, and two misdemeanor charges in 19CR1039 and 20CR462.

2

While Thomas was being held awaiting resolution of the charges against him, on November 12, 2019, the State filed a motion to revoke Thomas' phone and mail privileges. In that motion, the State alleged that Thomas repeatedly violated the no-contact order entered in case number 19CR1009 by making "no less" than five phone calls to E.M., one of Thomas' then-alleged victims, attempting to reconcile with her and offering her money if she would refuse to cooperate with the State. The State also alleged Thomas had attempted to contact other witnesses to persuade them not to testify against him. As a result of Thomas' actions, on December 9, 2019, the district court revoked Thomas' phone and mail privileges.

These privileges were restored on February 24, 2020, over the State's objections and concerns that Thomas would attempt to contact E.M. again and dissuade her from participating in the case. Before restoring Thomas' privileges, the district court admonished him, "Well, I'm going to hope, Mr. Thomas, that you learned something from . . . not being allowed the phone and mail privileges." Thomas replied, "I sure did." The district court reiterated that if Thomas violated the no-contact order, it would again revoke his phone and mail privileges.

On May 18, 2020, the State filed a second motion to revoke Thomas' phone and mail privileges, alleging that Thomas called E.M. "at least seven times" since his phone privileges had been restored. As a result, the district court revoked Thomas' privileges for a second time. Thomas' privileges were again restored in October 2020; however, they were revoked again in December 2020.

On February 17, 2021, the State filed a six-count second amended complaint in 19CR1009 that charged Thomas with one count each of aggravated robbery, aggravated intimidation of a witness, criminal threat, possession of methamphetamine, misdemeanor domestic battery, and misdemeanor theft. This complaint encompassed all of Thomas' above-mentioned cases. At a plea hearing on February 12, 2021, the parties advised the

district court it was their intent to resolve all of Thomas' cases by combining the charges into a single complaint. All other charges were dismissed.

The district court noted it had heard the preliminary hearings on all the felonies and advised it was in receipt of the written plea agreement. The written plea agreement, signed by Thomas, stated: "I fully understand that the Court is not bound by any agreements made between the County Attorney and my lawyer, concerning the sentence to be imposed in this case. I understand that it is the Court's responsibility, and the Court's alone, to determine the appropriate sentence in this matter."

The parties advised the district court that they believed Thomas' criminal history score would be either C, E, or F, but the plea agreement called for a prison sentence of 68 months regardless of Thomas' criminal history score, which would be accomplished through an agreed-to downward durational departure and by running the sentences concurrent.

After hearing the terms and agreement between the parties, the district judge discussed the following with Thomas:

> "THE COURT: Okay. And do you—Mr. Thomas, do you understand that any agreements regarding sentencing are recommendations to the Court but are not binding on the Court?
> "[THOMAS]: Yes, ma'am.
> "THE COURT: And do you understand that the imposition of sentence is the responsibility of the Court alone, although you and your attorney will have 14 days following sentencing to consider filing an appeal as it relates to the sentence?
> "[THOMAS]: Yes, ma'am."

Thomas entered pleas of no contest to all six charges in the second amended complaint, which the district court accepted as freely, knowingly, and voluntarily made. The State dismissed the remaining cases against Thomas.

At Thomas' sentencing on August 2, 2021, the district court calculated Thomas' criminal history score as E, making the presumptive sentence for Thomas' primary offense, aggravated robbery, 92, 88, or 82 months in prison. See K.S.A. 2020 Supp. 21-6804(a).

After hearing arguments and recommendations from the parties, the district court found substantial and compelling reasons to grant the requested downward durational departure. The district court placed a great deal of emphasis on the joint recommendation from the parties as reasons for granting the departure sentence to 68 months' imprisonment and considered that Thomas "did accept some responsibility for his actions by entering pleas of no contest, which did conserve judicial resources."

The district court then proceeded to impose standard guideline sentences of 11 months' imprisonment for drug possession and 6 months' imprisonment for criminal threat, as well as 12 months in the county jail for theft and 6 months in the county jail for domestic battery. All these sentences were ordered to run concurrent to the sentence for aggravated robbery.

However, for the remaining count of aggravated intimidation of a witness, the district court imposed the standard guidelines sentence of 18 months in prison and ordered it to run consecutive to the departure sentence for aggravated robbery, resulting in a total sentence of 86 months in prison. When asked for clarification by Thomas' defense counsel about following the plea agreement, the district judge replied, "I granted a durational departure as the parties had recommended, but I did run the Aggravated Intimidation of a Witness consecutive, I believe. So I had ordered Count

2 . . . to run consecutive to Count 1" and reiterated "[a]ll of the counts were concurrent to those, too. So that would be 68 months, plus the 18."

Thomas timely appeals.

### DID THE DISTRICT COURT ABUSE ITS DISCRETION IN SENTENCING THOMAS TO CONSECUTIVE SENTENCES?

Thomas appeals his departure sentence, arguing the district court abused its discretion in ordering that his sentence for aggravated intimidation of a witness run consecutive to his sentence for his aggravated robbery. Because Thomas' sentence was the result of a departure, we have jurisdiction to consider his appeal. See K.S.A. 2020 Supp. 21-6820(a) (departure sentence subject to appeal).

In this instance, the decision whether to run a sentence concurrent or consecutive to another sentence was within the district court's sound discretion. See K.S.A. 2020 Supp. 21-6819(b); *State v. Darrah*, 309 Kan. 1222, 1227, 442 P.3d 1049 (2019). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the district court; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). As the party asserting the district court abused its discretion, Thomas bears the burden of showing the abuse of discretion. See *State v. Randle*, 311 Kan. 468, 478, 462 P.3d 624 (2020).

Here, Thomas only asserts that the district court took an arbitrary action by ordering consecutive sentences. Thomas' complaint appears to be that the district court's failure to explain its departure from the plea agreement on one of the counts without explaining why was arbitrary and, therefore, an abuse of discretion.

6

"'[I]n Kansas both parties to a plea agreement assume the risk the sentencing court will impose a sentence different than the sentence recommended as part of the plea agreement because sentence recommendations made pursuant to a plea bargain are not binding on the trial court. [Citation omitted.]'" *State v. Mosher*, 299 Kan. 1, 2, 319 P.3d 1253 (2014); see *State v. Dull*, 302 Kan. 32, 64-65, 351 P.3d 641 (2015) (holding sentencing court did not abuse its discretion when it granted a durational departure sentence in one case but ran it consecutive to Dull's parallel case). This principle was declared in Thomas' written plea agreement and by the district judge at Thomas' plea hearing. Moreover, while an explanation is the better practice, it is not an abuse of discretion for the district court to impose consecutive sentences without an explanation. *State v. Frecks*, 294 Kan. 738, 742, 280 P.3d 217 (2012).

Given Thomas' behavior in his various cases, he cannot meet his burden to establish the sentencing court abused its discretion. "The sentencing judge may consider the need to impose an overall sentence that is proportionate to the harm and culpability and shall state on the record if the sentence is to be served concurrently or consecutively." K.S.A. 2020 Supp. 21-6819(b). The record shows that Thomas contacted E.M., who was a victim of one of Thomas' crimes, on multiple occasions in violation of the no-contact order. The same district judge who revoked Thomas' mail and phone privileges was also the sentencing judge, placing her in the unique position to observe Thomas' conduct towards E.M. Clearly, the district court felt there was sufficient reason to impose the sentence for aggravated intimidation of a witness consecutive to the other sentences given Thomas' repeated violations of the no-contact order. Moreover, it is also apparent the district court believed that an increased penalty for the crimes against E.M. was appropriate given Thomas' history. Such a position strikes us as reasonable and well within the bounds of the district court's discretion.

Affirmed.