No. 126,068

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOHN FRANCIS COLWELL,
*Appellant*.

SYLLABUS BY THE COURT

1.

Laying a foundation for admitting evidence at trial is not defined by statute or an evidentiary rule, but the term describes preliminary questions designed to establish that evidence is admissible. The proponent of a particular kind of evidence, whether a physical object or the testimony of a witness, is required to lay a foundation before it may be admitted into evidence.

2.

Foundation requirements vary based on the type of evidence being offered for admission. Laying a foundation requires that written documents be properly authenticated prior to being admitted as evidence.

3.

Foundation for a copy of an official record being offered as a hearsay exception under K.S.A. 2024 Supp. 60-460(o) is established by proper authentication under K.S.A. 2024 Supp. 60-465.

1

4.

A sufficiency of evidence challenge requires reviewing all the evidence admitted in a light most favorable to the State to determine whether a rational fact-finder could have found a defendant guilty beyond a reasonable doubt.

Appeal from Riley District Court; KENDRA S. LEWISON, judge. Oral argument held July 8, 2025. Opinion filed August 22, 2025. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*David Lowden*, deputy county attorney, *Barry R. Wilkerson*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., BRUNS and BOLTON FLEMING, JJ.

BOLTON FLEMING, J.: John Colwell and J.M. had a volatile relationship that began in 2018 and continued over several years. On May 20, 2021, J.M. filed a protection from stalking petition against Colwell. The district court issued a temporary order and set the case for final hearing. A Riley County police officer later filed a return of service with the district court stating that an officer personally served Colwell with a copy of the petition, summons and notice of hearing date, and temporary protective order the same day the case was filed.

In the days that followed, J.M. received calls from an unknown number she believed was Colwell, and on May 26, 2021, flowers were delivered to her home with no card. A few days later, J.M. answered a call from the unknown number and recognized Colwell's voice when he asked if J.M. "like[d] the flowers." J.M. called the police and an investigation revealed that Colwell purchased the flowers sent to J.M. at a nearby Dillon's store.

2

As a result of Colwell's actions, the State charged him with two counts of stalking, two counts of violating a protective order, and one count of harassment by telecommunication device.

At trial, the State sought to admit Exhibit 2 into evidence. Exhibit 2 was a return of service form that indicated an officer had personally served Colwell with a copy of the temporary protective order. Colwell's attorney objected to the admission of Exhibit 2 based on a lack of foundation. After considering foundation, authentication, and hearsay principles, the district court admitted Exhibit 2 into evidence.

The jury convicted Colwell of one count of stalking, two counts of violating a protective order, and one count of harassment by telecommunication device. Colwell was acquitted on the second stalking count.

On appeal, Colwell raises two issues:  first, whether the district court abused its discretion by admitting Exhibit 2 into evidence, and second, whether there was sufficient evidence to convict Colwell of stalking or violating a protective order.

We find that the district court did not abuse its discretion by determining that Exhibit 2 was admissible. The document met foundational requirements because it was properly authenticated as a copy of an official record and satisfied a recognized hearsay exception. There was also sufficient evidence to convict Colwell for both stalking and violating a protective order. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In 2018, Colwell and J.M. began a difficult, off-and-on romantic relationship that continued over several years. On May 20, 2021, J.M. petitioned for a protection from stalking order against Colwell in Riley County Case No. RL-2021-DM-288, which led to

3

the district court issuing a temporary protective order that same day and scheduling a final hearing for June 9, 2021. Later, a Riley County police officer filed a return of service with the district court indicating Colwell had been personally served with a copy of the petition, summons and notice of hearing date, and temporary protective order on the same day the case was filed.

In the ensuing days, J.M. received several calls from an unknown number that she believed came from Colwell. On the morning of May 26, 2021, flowers were delivered to J.M.'s home with no name included on the card to indicate who sent them, but J.M. believed they also came from Colwell. Four days later, J.M. answered one of the unknown number's calls and recognized Colwell's voice on the call. During the call, Colwell asked J.M. if she "like[d] the flowers." J.M. called the police shortly after the call ended and a Riley County police officer responded. An investigation revealed that Colwell purchased the flowers at the floral department of a nearby Dillon's the day before they were delivered.

The State ultimately charged Colwell with two counts of stalking, two counts of violating a protective order, and one count of harassment by telecommunication device for his conduct.

During the State's presentation of evidence at trial, Officer Jason Krause testified that he responded to J.M.'s 911 call. While meeting with J.M., she showed him a copy of the temporary protection from stalking order on her phone. During that testimony, the State placed a packet of documents in front of Krause and began questioning him about the contents. Beginning with the first exhibit, Krause testified that it appeared to be a paper copy of the temporary protection from stalking order he saw on J.M.'s phone. The State asked the district court to admit the document as State's Exhibit 1, to which Colwell's counsel objected for lack of foundation because "[t]here's no testimony of whether or not that order was served and who served it." The court sustained the

4

objection, after which the State questioned Krause further about the contents of the document. Krause testified that it was a copy of a protective order dated May 20, 2021, issued out of Riley County under Case No. RL-2021-DM-288, and involved J.M. and Colwell as plaintiff and defendant, respectively.

The State then began questioning Officer Krause about a second document—labelled as State's Exhibit 2—which Krause said was a standard return of service form used by officers when serving paperwork. Colwell's counsel promptly objected, stating Krause "did not serve the—allegedly serve this order so I am objecting to foundation, also." The district court overruled the objection, explaining, "I think he was just describing what the general form was." After Krause testified that he had personally served protective orders using this form—but not specifically in this case—the State asked the court to admit both exhibits. This time, Colwell's counsel objected only to the admission of Exhibit 2, explaining, "We don't know which officer served it, and we don't know whether or not the officer that served that order advised Mr. Colwell what conduct is prohibited." The district court admitted Exhibit 1 but ruled that "Exhibit 2 will not be admitted based on foundation and hearsay."

During an in-chambers conference outside the jury's presence, the State asked the district court to admit Exhibit 2 as a hearsay exception because it was a certified court record, explaining the court clerks had certified Exhibit 1 "as a part of the whole packet" containing both exhibits. The court agreed but noted that there had been no testimony the document was certified, which was "one of the reasons why I sustained the objection." Colwell's counsel asked the court to delay admitting the exhibit so that the State could lay the proper foundation through "Officer Gambrel"—the officer who personally served Colwell. The prosecutor stated calling Gambrel would not be necessary since the document could be admitted "because it's a certified court record." The court asked Colwell's counsel if he doubted the authenticity of the document, to which he responded, "Well, I have my concern with whether or not Officer Gambrel actually served the

5

attached document and whether or not Officer Gambrel explained to Mr. Colwell what conduct is prohibited." The court interjected to say that counsel's concern was not "an evidentiary objection, because that document speaks for itself," then asked if there would be "any evidentiary objection once it's certified?" As counsel began to reiterate his concern, the court interjected again to say that over the lunch break, "the clerks [could] verify that it's accurate, and then if it is, then they can certify that and then we'll resume the testimony."

After the recess, the State resumed questioning Officer Krause about Exhibit 2, to which Colwell's counsel simply noted a "continuing objection." After Krause confirmed that Exhibit 2 contained a statement of certification at the bottom and that the document showed proof of service, the court admitted the exhibit. The State then questioned Krause about an additional document labeled as State's Exhibit 2A, which Krause said "appears to be a summons of the court" and also confirmed was a certified record. Colwell did not object to the admission of State's Exhibit 2A.

Exhibits 2 and 2A each contained a statement of certification on the bottom stating the document was a "CERTIFIED COPY" and "[t]he above is a true and correct copy of the document which is on file or of record in this court. Dated this 13th of October, 2022" and was signed by a deputy clerk of Riley County. A similar statement of certification was included in Exhibit 1, although the date reflected on the document was March 7, 2022.

Once both exhibits were admitted, Krause testified about the contents of Exhibit 2, specifically that it showed Officer Gambrel personally served Colwell at "17:10 hours" or "5:10 p.m." on May 20, 2021, with copies of the "restraining order, civil summons, notice of hearing, [and] petition." This information is notated on the exhibit as well, along with Colwell's address. Krause explained that he typically gives a brief summary of documents when personally serving individuals.

6

At the conclusion of trial, the jury found Colwell guilty on all but one of the charges. As argued by the State in closing, three of Colwell's convictions—stalking, violating a protective order, and harassment by telecommunication device—related to the May 2021 phone call placed by Colwell that J.M. answered. While the jury found Colwell guilty of violating a protective order for having the flowers delivered to J.M.'s home, it acquitted him on the stalking charge that stemmed from Colwell purchasing the flowers.

At sentencing, the district court sentenced Colwell to a total underlying sentence of 14 months, suspended the sentence, and placed Colwell on probation for 12 months.

Colwell timely appeals.

ANALYSIS

*The district court did not abuse its discretion by admitting Exhibit 2 into evidence.*

Colwell first challenges the admission of Exhibit 2—a certified copy of the return of service form for J.M.'s temporary protection from stalking order—over his objection for lack of foundation. He contends the only witness who could lay the foundation for this exhibit was the officer indicated on the form as the individual who personally served Colwell. And without the proper foundation laid to admit this exhibit, Colwell contends the State could not prove he knowingly stalked J.M. or violated the protective order, so the only available remedy is to vacate his convictions. The State disagrees, arguing that the district court correctly determined Exhibit 2 was self-authenticating because it is a certified copy of an official record.

*Standard of Review*

A district court's decision to admit evidence involves several legal considerations, such as determining whether the evidence is relevant, applying statutory rules of evidence, and weighing prejudice against probative value. *State v. Levy*, 313 Kan. 232, 237, 485 P.3d 605 (2021). Appellate courts review whether evidentiary foundation requirements have been met for an abuse of discretion. *State v. Jenkins*, 311 Kan. 39, 45, 455 P.3d 779 (2020). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Bilbrey*, 317 Kan. 57, 63, 523 P.3d 1078 (2023).

When reviewing for an abuse of discretion, appellate courts review a district court's factual findings for substantial competent evidence. See *Jenkins*, 311 Kan. at 45. "Substantial competent evidence '"is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved."'" *State v. Brown*, 300 Kan. 542, 546, 331 P.3d 781 (2014) (quoting *In re D.D.M.*, 291 Kan. 883, 893, 249 P.3d 5 [2011]). Colwell bears the burden of showing the court abused its discretion. *State v. Keys*, 315 Kan. 690, 708, 510 P.3d 706 (2022).

*Foundation is a preliminary step in considering the admissibility of evidence.*

Foundation is a common evidentiary objection; yet, there is no statute or evidentiary rule that requires "foundation." Foundation is merely a "'loose term for preliminary questions designed to establish that evidence is admissible.'" *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015); see also *State v. Banks*, 306 Kan. 854, 865-66, 397 P.3d 1195 (2017) ("'The proponent of a particular kind of evidence, whether it be a physical object or the testimony of a witness, is required to lay a foundation before it may be admitted into evidence.'") (quoting *Wiles*,

302 Kan. at 74). The purpose of establishing foundation is "prevent[ing] the finder of fact from being exposed to inadmissible evidence." *Banks*, 306 Kan. at 866. Laying a proper foundation for an item of evidence confirms its authenticity and allows the evidence to be considered further.

> *Foundation requires that written documents be properly authenticated prior to being admitted into evidence.*

The requirements attached to "foundation" vary depending on the type of evidence being offered. Foundational requirements related to written documents are well-established.

While "foundation" is not specifically required by any statute or evidentiary rule, Kansas courts routinely treat the authentication requirements in K.S.A. 2024 Supp. 60-464 and K.S.A. 2024 Supp. 60-465 as "a specific, statutory foundational requirement." *Banks*, 306 Kan. at 866 (reviewing exclusion of photographs for lack of foundation); *State v. Hill*, 290 Kan. 339, 364, 228 P.3d 1027 (2010) (discussing failure to authenticate a handwritten note as a foundation objection); *State v. Milum*, 202 Kan. 196, 198, 447 P.2d 801 (1968) (same).

K.S.A. 2024 Supp. 60-464(a) states that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."

Notably, before a 2021 legislative amendment, the authentication requirements for a writing were contained in K.S.A. 60-464. Interpreting this prior version of the statute, the Kansas Supreme Court held in *State v. Robinson*, 303 Kan. 11, 225, 363 P.3d 875 (2015), *disapproved of on other grounds by State v. Cheever*, 306 Kan. 760, 402 P.3d 1126 (2017), that the authentication requirement is "'satisfied by evidence sufficient to

9

support a finding that the matter in question is what its proponent claims. [Citations omitted.]'" The court later reiterated this holding, adding that the burden is "'minimal' or 'slight'" and a "[a] proponent need only proffer evidence upon which a reasonable juror could conclude that the message is what the proponent represents it to be." *Jenkins*, 311 Kan. at 51 (quoting *Robinson*, 303 Kan. at 225-26).

K.S.A. 2024 Supp. 60-465 relates to authentication of public documents and self-authenticating evidence. Relevant in this case is its requirements pertaining to copies of official records:

> "A writing purporting to be a copy of an official record or of an entry therein, meets the requirements of authentication if the judge finds that the writing purports to be published by authority of the nation, state or subdivision thereof, in which the record is kept or evidence has been introduced sufficient to warrant a finding that the writing is a correct copy of the record or entry. Extrinsic evidence of authenticity as a condition precedent to admissibility is not required if:

> (1) The office in which the record is kept is within this state and the writing is attested as a correct copy of the record or entry by a person purporting to be an officer, or a deputy of an officer, having the legal custody of the record[.]" K.S.A. 2024 Supp. 60-465(a)(1).

Statutory authentication requirements do exist, but the burden of establishing foundation to admit a writing is minimal. As long as the proponent offers evidence that a reasonable juror could rely on to conclude that the writing is what the proponent represents it to be, a proper foundation has been laid. *Jenkins*, 311 Kan. at 51. And under K.S.A. 2024 Supp. 60-465, some writings are authenticated simply by the manner in which they are kept, and some are even self-authenticating.

10

*Foundation for the admission of official records under K.S.A. 2024 Supp. 60-460(o) is satisfied by proper authentication under K.S.A. 2024 Supp. 60-465.*

As the district court observed, although Colwell objected to the admission of Exhibit 2 based on lack of foundation, he did not object to the authenticity of the return of service as a court record. Instead, he objected to the return of service being used to prove the contents of that document—that a police officer personally served Colwell with a copy of the protection from stalking order. That is, as the district court noted, the substance of Colwell's objection to Exhibit 2 was not really to its foundation, but to the admission of the hearsay in that document.

Foundation and hearsay are different evidentiary requirements, serving different purposes. While proper foundation generally ensures that physical evidence is what it purports to be, evidentiary rules against admitting hearsay ensure that evidence of out-of-court statements is sufficiently reliable. See *State v. Randle*, 311 Kan. 468, 476, 462 P.3d 624 (2020).

Colwell's objection to Exhibit 2 intertwined elements of both foundation and hearsay. As part of Colwell's objection to foundation, the record reflects the district court considered whether hearsay prohibited admitting Exhibit 2 into evidence.

Hearsay is defined in K.S.A. 2024 Supp. 60-460: "Evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissible." But that statute sets forth several exceptions to this general rule. An exception to the hearsay rule found in K.S.A. 2024 Supp. 60-460(o) allows admission of "a writing purporting to be a copy of an official record" that is properly authenticated under K.S.A. 2024 Supp. 60-465.

11

Thus, the rules relating to foundation, authentication, and hearsay for public documents and other self-authenticating evidence collapse into the rule set forth in K.S.A. 2024 Supp. 60-465.

Colwell's sole argument appears to be that the State also needed to demonstrate foundation by presenting testimony "from the person who allegedly personally served the order" who he asserts was "[t]he only person competent to testify as to personal service." In addition to citing no authority recognizing this position, Colwell misunderstands what the State needed to show before the court could admit Exhibit 2. Put simply, a copy of a document from a Kansas court—which Colwell concedes Exhibit 2 to be—with the certification described above suffices to meet the authentication requirements of K.S.A. 2024 Supp. 60-465. The district court correctly resolved any hearsay issue by first finding the document was properly authenticated under K.S.A. 60-465, and then allowing its admission as a hearsay exception under K.S.A. 60-460(o). Colwell's original objection, lack of foundation, ultimately triggered an analysis of authentication and hearsay as well, and the district court's conclusions on all three issues were correct.

For these reasons, the district court did not abuse its discretion by admitting Exhibit 2 over Colwell's lack of foundation objection.

*There was sufficient evidence to convict Colwell of stalking and violating a protective order.*

*Standard of Review*

On a sufficiency challenge, our standard of review requires reviewing all the evidence admitted in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. When reviewing a sufficiency of the evidence claim, appellate courts do not reweigh evidence,

12

resolve conflicts in the evidence, or pass on the credibility of witnesses. *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021).

*Discussion*

Colwell argues there was insufficient evidence to support his convictions for stalking and violating a protective order because the State failed to prove he was personally served with a copy of the protective order. He bases this argument, in part, on his first claim that the district court erroneously admitted Exhibit 2 without the State laying a proper foundation. As discussed, Exhibit 2 was properly authenticated under K.S.A. 60-465, so it was admissible evidence under the hearsay exception for copies of official records found in K.S.A. 60-460(o).

But as the State points out, even if Colwell was successful on his foundational objection to Exhibit 2, the Kansas Supreme Court has held that erroneously admitted evidence must still be considered when reviewing a sufficiency of the evidence claim. See *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

Colwell challenges only three of his convictions: one count of stalking and two counts of violating a protective order. The fourth conviction—one count of harassment by telecommunication device—is not at issue in this appeal.

As to the stalking charge, the only statutory element in dispute appears to be whether Colwell was "served with, or otherwise provided notice of, any protective order." K.S.A. 21-5427(a)(3). The district court instructed the jury on this element to determine whether "[t]he defendant was served with, or otherwise given notice of a protective order prohibiting contact with [J.M.]." Although Colwell believes Exhibit 2 was erroneously admitted, he admits that it shows an officer certified to personally serving Colwell with a copy of the petition, notice of hearing, summons, and temporary protective order issued

13

in Case No. RL-2021-DM-288. A rational fact-finder viewing this evidence in the light most favorable to the State could have found the defendant guilty of stalking beyond a reasonable doubt.

Similarly, although the State charged Colwell with two counts of violating a protective order for different conduct, the only element in dispute for either charge is whether he "knowingly" violated a protective order. K.S.A. 21-5924(a). The district court instructed the jury on this element to determine whether he "knowingly violated a protection from stalking order issued under Kansas law." Colwell's only argument on this point is that he "cannot be said to knowingly violate an order he was unaware even existed." But again, Exhibit 2 showed that he was personally served with a copy of the petition, summons, notice of hearing, and temporary protective order issued in Case No. RL-2021-DM-288. A rational fact-finder viewing the evidence in the light most favorable to the State could have found Colwell knowingly violated the protective order for his subsequent conduct in sending flowers to J.M.'s residence and then calling her from an unknown number.

As a result, there was sufficient evidence to support Colwell's convictions.

Affirmed.