No. 116,048

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SAMUAL MICH WHITE,
*Appellant*.

SYLLABUS BY THE COURT

1.

When the sufficiency of the evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt.

2.

A verdict may be supported by circumstantial evidence if such evidence provides a basis for a reasonable inference by the factfinder regarding the fact in issue. Circumstantial evidence, in order to be sufficient, need not exclude every other reasonable conclusion.

3.

When analyzing jury instruction issues, an appellate court follows a three-step process by (1) determining whether the appellate court can or should review the issue, i.e., whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits to determine whether error occurred; and (3) assessing whether the error requires reversal.

1

4.

Arguments and statements of counsel are not evidence.

5.

The district court has a duty to instruct the jury on the law that applies to the evidence of the case. When no facts have been admitted to support an instruction, it is not factually appropriate.

6.

Trial courts should not interfere with a defendant's chosen defense theory by giving an instruction which neither party requested and which may undermine a defendant's chosen theory.

7.

A person charged with a crime has the right to control his or her theory of defense and for that theory to be accurately reflected in the jury instructions.

8.

The parental discipline instruction is an affirmative defense instruction.

9.

In a parental discipline instruction, the use of the word "force" refers to corporal punishment.

Appeal from Finney District Court; WENDEL W. WURST, judge. Opinion filed December 22, 2017. Reversed and remanded with directions.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Tamara S. Hicks*, assistant county attorney, *Susan Lynn Hillier Richmeier*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., MCANANY and POWELL, JJ.

SCHROEDER, J.:  Samual Mich White appeals his jury trial conviction for aggravated endangerment of a child raising multiple issues. Our review of the record reflects the evidence in the light most favorable to the State—though a very close call—supports his convictions. However, over White's objection, the district court gave the jury an instruction setting out an affirmative defense—parental discipline. This decision by the district court denied White the right to control his own theory of defense. We find the instruction was given in error, affected the outcome of the trial, and we must reverse. Reversed and remanded for a new trial.

## FACTS

At approximately 9 a.m. on May 29, 2015, probation officer Carlos Murillo and Garden City Police Officer Charles Doull conducted a surprise visit to White's home. After they allegedly waited outside the house for 10 minutes, White, who appeared to have just woken up, answered the door and gave them permission to come inside.

After checking White's bedroom, Murillo asked where White's children were. White responded they were sleeping in the room next door. Murillo asked White to show him the children. White unlocked a chain lock located toward the top of the outside of the children's bedroom door. Murillo saw two small children sleeping on the floor of a very bare room. With the door open, the room contained a strong smell of urine. Murillo became concerned that locking the children in their room was not safe and was troubled with the condition of the house as a whole.

3

The State charged White with two counts of abuse of a child or, in the alternative, aggravated endangering a child. During opening statements at trial, White's counsel told the jury:

> "Good afternoon, jury members who are here. The word today is discipline. This is a case of parents disciplining their children or is it an intentional thing on the parent, intentional act on the parents to harm the children? Discipline of the children to keep them from harm, to block them from harm, a concerned parent is—would be discipline.
> . . . .
> ". . . For those reasons, again, we go back to discipline, parents to discipline, to keep the children from harm, keep them from bad stuff, and this what this case is all about."

Murillo testified:

- The children's room was very bare;
- a mattress was lying on the floor next to a bed frame;
- the mattress appeared to have urine stains and fecal matter on it;
- there were urine stains on the floor;
- he did not see any toys;
- the closet door was missing;
- the wood flooring had been pulled out of the closet and left in the room; and
- the children were wearing sagging, soiled diapers.

On cross-examination, Murillo admitted he did not have any tests performed in the room to verify the stains were from fecal matter. Murillo also acknowledged he did not recall any injuries to the children because of their soiled diapers.

4

Jerry Kramer, a special investigator with the Kansas Department for Children and Families, testified White told him the children were locked in their room because they make a huge mess in the house. Kramer indicated the children were locked in the room from the time Christina Mendoza, White's wife, went to bed between 10 and 10:30 p.m. until White woke up between 12 and 12:30 p.m. Kramer testified he was concerned about all the possible choking hazards in the room. He also testified there were two bags of snap pops, a type of firework, on the floor of the living room and there were locks on the refrigerator and freezer doors. White responded the locks were to keep the children from getting inside.

Mendoza testified she locked the children in their room between 10 and 11 p.m. if they were not asleep when she went to bed. The lock was on the door so the children would not get out. She testified she and White agreed to place the lock on the door, and White installed the lock. She indicated they added the lock because one of their children previously cut himself trying to slice an orange while Mendoza was in the laundry room. Mendoza indicated there were similar instances when she was home by herself.

After Mendoza testified, the State rested. Before beginning the second day of testimony, the district court discussed jury instructions. The district court proposed an instruction on the parental discipline defense because White's counsel discussed discipline of the children during opening statements. White's counsel objected, stating the instruction was inappropriate because the defense applied to the use of physical force or physical touching of the child. The State also indicated it was not requesting the instruction.

White testified in his own defense. He testified Murillo and Officer Doull waited 3 minutes, not 10, before he answered the door because he had been asleep. He was not concerned the children had only diapers on as he noted they take their clothes off all the time. White also testified there were no choking hazards in the bedroom and the chain

5

lock was attached to a thin door and was not especially secure. White told the jury he was attuned to the sounds of his children calling out for him and woke up when they did. White installed the lock because he was concerned about a number of incidents that occurred while his wife was home with the children. He indicated normal child locks were ineffective because the children quickly learned how to open them.

At the final jury instruction conference, the district court again asked about the parental discipline defense instruction. White objected and reiterated he did not believe the instruction should be included because this case did not involve battery or physical force. The State took no position on the issue. The district court indicated it believed the instruction was appropriate because locking the children in the room was "akin to a static force," which was done to protect the children from danger.

The district court instructed the jury:

"The defendant raises parental discipline as a defense. A parent of a minor child is justified in using a reasonable amount of force upon a child for the purpose of safeguarding or promoting the child's welfare. Evidence in support of this defense should be considered by you in determining whether the State has met its burden of proving that the defendant is guilty. The State's burden of proof does not shift to the defendant."

The jury found White not guilty of abuse of a child on both counts, but it found him guilty of both counts of aggravated endangering a child. The district court sentenced White to 14 months' imprisonment.

ANALYSIS

*Sufficient Evidence*

> "'When the sufficiency of evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016).

"'In making a sufficiency determination, the appellate court does not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility.' [Citations omitted.]" *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016). It is only in rare cases where the testimony is so incredible that no reasonable factfinder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983); see *State v. Naramore*, 25 Kan. App. 2d 302, 322, 965 P.2d 211 (1998) (uncontroverted expert testimony that defendant physician's treatment was within reasonable health care protocols insufficient to uphold murder and attempted murder convictions).

A verdict may be supported by circumstantial evidence if such evidence provides a basis for a reasonable inference by the factfinder regarding the fact in issue. Circumstantial evidence, in order to be sufficient, need not exclude every other reasonable conclusion. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016).

As charged, aggravated endangering a child is: "Recklessly causing or permitting a child under the age of 18 years to be placed in a situation in which the child's life, body or health *is* endangered." (Emphasis added.) K.S.A. 2016 Supp. 21-5601(b)(1).

Generally, most challenges to the sufficiency of the evidence in aggravated child endangerment cases focus on whether the defendant acted recklessly. See, e.g., *State v.*

7

*Bolze-Sann*, 302 Kan. 198, 203-04, 352 P.3d 511 (2015) (challenging whether defendant acted recklessly because the State did not show she should have realized a particular danger or that the danger was imminent); *State v. Herndon*, 52 Kan. App. 2d 857, 862, 379 P.3d 403 (2016) (challenging whether defendant acted recklessly because there was no evidence he was aware child was in the back seat of vehicle he shot at), *rev. denied* 306 Kan. ___ (October 6, 2017); *State v. Knight*, No. 105,092, 2012 WL 2325849, at *3 (Kan. App. 2012) (unpublished opinion) (challenging whether defendant acted recklessly when he left a three-year-old child on beach unattended for several hours). In these cases, the defendants tacitly acknowledged the child was endangered but argue their conduct was not reckless.

Here, White does not argue he acted reasonably. He argues the State did not present sufficient evidence his children's lives, bodies, or health *were* endangered—a necessary element of aggravated child endangerment. Without explicitly saying it, White is really arguing the State only presented evidence sufficient to support a conviction for child endangerment because their lives, bodies, or health *may have been* endangered.

The State replies the children were locked inside their room for up to 14 hours a day with dangerous items left in the room, including "broken toys, bed frames, pieces of the wood [flooring], and empty bottles." It argues the jury found the children to be endangered, so this court should find there was proof beyond a reasonable doubt that by keeping his children in a locked room, White created a dangerous situation where the children's life, body, or health *were* endangered.

To be guilty of aggravated child endangerment, the defendant must have placed a child somewhere the child is *actually* endangered, not just might be endangered. "While the line between 'may be endangered' and 'is endangered' might not be completely distinct, there is a line." *State v. Storms*, No. 113,521, 2016 WL 758351, at *3 (Kan. App. 2016) (unpublished opinion).

8

At trial, the State's case focused on:

- The children were in sagging, full diapers;
- the room had a strong odor of urine;
- the room had urine and fecal stains;
- the children were locked in their room for up to 14 hours at one time;
- there was no food or water in the room;
- there was no way for the children to leave the room if there was a fire; and
- there were choking hazards in the room.

Murillo testified the children were wearing soiled, sagging diapers. He could tell the diapers had not been changed for a while. However, while he did not see anyone change the diapers, he also acknowledged he did not see any injuries to the children as a result of being in soiled diapers. Murillo also testified the children's room smelled strongly of urine and he observed what he believed to be fecal matter on the mattress. He also testified he observed urine stains on the floor. However, he admitted he did not test any of the stains to determine whether the stains were, in fact, urine and fecal matter.

Similarly, Kramer testified he was concerned because the children were locked in the room for up to 14 hours with no access to food or water. However, he also acknowledged he could not tell how long the water bottle in the room had been empty. The record also reflects the refrigerator doors had locks on them. The State did not present evidence White denied his children food or water. In fact, Kramer testified that when he arrived sometime in the afternoon, the children were in the living room eating vanilla wafers.

Additionally, Kramer testified the lock on the outside of the bedroom door was placed too high for a two or three year old to reach and could not be opened while in the

room. Kramer testified that when he asked White what the children would do in case of a fire, White responded he did not know.

The State also presented evidence of choking hazards in the children's room. State's Exhibit 4 is a picture showing toys and "possible choking hazards" present in the children's room. Kramer testified the water bottle caps, which he assumed were in the room, were a choking hazard. However, as White argues, these items only endanger a child if the items are placed in the child's mouth. The State also presented evidence of "snap pops," a type of firework that explodes when thrown on the ground, in the living room. Kramer expressed concern these could do "quite a bit of damage" to the children's teeth if they bit them.

The evidence presented by the State in this matter creates a close call on whether the evidence was sufficient to support the jury's verdict for aggravated endangerment of a child. Even though this is a close call, we are mindful of our standard of review—we must review the evidence in a light most favorable to the State. See *Rosa*, 304 Kan. at 432-33.

Here, the evidence reflects the children were locked up before White and Mendoza went to bed and then remained in the bedroom for up to 14 hours. The mattress and room was stained with urine and fecal matter. There appeared to be no fresh water or food in the room when Murillo entered. The room had a strong odor of urine and both children's diapers were sagging and baggy as they were soiled. The closet flooring had been removed and the flooring was lying loosely in the bedroom along with other choking hazards. There were also snapping pops lying loosely on the living room floor that could be a choking hazard or cause damage to the children's mouths. With our standard of review in mind, we find, given the totality of the evidence, there was sufficient direct and circumstantial evidence presented by the State to support White's conviction for aggravated endangerment of a child as to both counts.

10

*Error to Give Parental Discipline Instruction*

White argues the district court erred when it gave an instruction on the affirmative defense of parental discipline over his multiple objections. He contends the instruction was neither factually nor legally appropriate and the district court's decision to give the instruction dramatically changed his theory of defense and the right to choose and control his own theory of defense. As such, White asserts the error amounted to structural error.

The State contends there was sufficient evidence admitted to support the district court's decision to give the instruction. It asserts the district court had an independent duty to instruct the jurors on the law that applied in the case. The State also argues White invited the error when he placed parental discipline at issue.

The district court instructed the jury, in relevant part:

"The defendant raises parental discipline as a defense. A parent of a minor child is justified in using a reasonable amount of force upon a child for the purpose of safeguarding or promoting the child's welfare. Evidence in support of this defense should be considered by you in determining whether the State has met its burden of proving that the defendant is guilt. The State's burden of proof does not shift to the defendant."

"When analyzing jury instruction issues, an appellate court follows a three-step process by: (1) Determining whether the appellate court can or should review the issue, *i.e.*, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits to determine whether error occurred; and (3) assessing whether the error requires reversal. *State v. Pfannenstiel*, 302 Kan. 747, 752, 357 P.3d 877 (2015). Whether a party has preserved a jury instruction issue affects the reversibility inquiry at the third step. 302 Kan. at 752; see also K.S.A. 2015 Supp. 22-3414(3) ('No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict . . . unless the instruction or

11

the failure to give an instruction is clearly erroneous.')." *State v. Louis*, 305 Kan. 453, 457, 384 P.3d 1 (2016).

White objected to this jury instruction initially when the district court advised both parties before starting the second day of the trial that it was contemplating the instruction. White renewed his objection to the instruction at the final instruction conference. White preserved the issue for appeal.

"At the second step, we consider whether the instruction was legally and factually appropriate, employing an unlimited review of the entire record. [Citation omitted.] If the district court erred, and the error did not violate a constitutional right, 'the error is reversible only if [the court] determine[s] that there is a "reasonable probability that the error will or did affect the outcome of the trial in light of the entire record."' *State v. Plummer*, 295 Kan. 156, 168, 283 P.3d 202 (2012) (quoting *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 [2011], *cert. denied* 565 U.S. 1221 [2012])." *Louis*, 305 Kan. at 457-58.

*Factually Appropriate*

White argues the instruction was not factually appropriate because it "incorrectly gave the jury the impression that [he] was acknowledging that he had used 'a reasonable amount of force' on his children." He also contends the instruction incorrectly implied the children were being disciplined rather than being kept in their room to keep them from getting into danger.

The State responds White invited the error by discussing discipline during his opening statement. The State fails to acknowledge counsel's argument during the opening statement is not evidence. Otherwise, the State does not address whether the instruction was factually appropriate.

During opening argument, White's counsel told the jury:

> "Good afternoon, jury members who are here. The word today is discipline. This is a case of parents disciplining their children or is it an intentional thing on the parent, intentional act on the parents to harm the children? Discipline of the children to keep them from harm, to block them from harm, a concerned parent is—would be discipline.
>
> . . . .
>
> ". . . For those reasons, again, we go back to discipline, parents to discipline, to keep the children from harm, keep them from bad stuff, and this what this case is all about."

The jury did not hear the word discipline again until the district court published the parental discipline instruction. Defense counsel's opening statement did not invite the jury instruction. The State's argument is unpersuasive.

At the final jury instruction conference, the district court explained why it believed the parental discipline instruction was appropriate, stating:

> "Well, I've heard the evidence, and it seems to me that the issue with regard to placing a lock on the outside of the door is before the jury and the defense has provided some justification that that is essentially for safety purposes, as it were the least restrictive actions that could be taken to keep the kids from getting into the garage, to get dangerous tools, getting into the knife drawer and being confined and not allowed to go outside without supervision. And it sounds like that is your defense.
>
> "I have an obligation even when not instructed to give an instruction if the evidence warrants it. And the instruction is that a parent of a minor child is justified in using a reasonable amount of force upon a child for the purposes of safeguarding and promoting the child's welfare. It seems to me that locking—putting a lock on the door is akin to a static force which was done for the purpose of safeguarding or promoting the child's welfare, so I am going to give the instruction."

The parental discipline instruction was not factually appropriate. The State presented no evidence there was improper physical contact between White and his children. The instruction as given discusses the use of "reasonable amount of force upon a child." From our review, the instruction's use of the word "force" refers to corporal punishment and there was no evidence presented of corporal punishment. If the reference can be construed as referring to the force of locking the door, then all of the evidence reflects the children's mother locked them in their room and when White came home, he just left the door locked.

This court recognized the parental discipline instruction as an affirmative defense in *State v. Wade*, 45 Kan. App. 2d 128, 136-37, 245 P.3d 1083 (2010). We have been able to find only one other Kansas case, *State v. McDuffie*, No. 106,528, 2012 WL 3136492 (Kan. App. 2012) (unpublished opinion), discussing the defense of parental discipline. In both *Wade* and *McDuffie*, the defendants were charged with battery. Both defendants admitted to using physical force but argued the use of force was justified. Similarly, the cases cited in *Wade* supporting the parental discipline instruction all involved physical contact between the defendant and his or her child. We have been unable to find any cases in Kansas in which the defendant did not use physical force in disciplining the child when the defense of parental discipline was given by the district court. See *State v. Severns*, 158 Kan. 453, 459, 148 P.2d 488 (1944) (the defense of parental discipline is recognized when physical force was used on a child).

*Legally Appropriate*

If there is evidence to support the theory, a defendant is entitled to instructions on his or her theory of defense. *State v. Salary*, 301 Kan. 586, 593, 343 P.3d 1165 (2015). However, "trial courts should not interfere with a defendant's chosen defense theory by giving an instruction which neither party requested and which may undermine defendant's chosen theory." *State v. Trussell*, 289 Kan. 499, 505, 213 P.3d 1052 (2009).

In *State v. Sappington*, 285 Kan. 158, 165, 169 P.3d 1096 (2007), the Kansas Supreme Court stated it "believe[d] that imposing a defense upon a defendant which is arguably inconsistent with the one upon which he completely relies—by providing the jury a defense instruction that neither party requests—is akin to denying the defendant the meaningful opportunity to present his chosen theory of defense."

Here, neither White nor the State requested the parental discipline jury instruction. In fact, White explicitly argued against the instruction on more than one occasion. Giving the instruction interfered with White's opportunity to present his own theory of defense. We find no support in the law to justify giving the instruction. The instruction was not legally appropriate.

### *Prejudice*

White argues the error was structural. "Errors are structural when they defy analysis by harmless-error standards because they affect the framework within which the trial proceeds." *State v. Jones*, 290 Kan. 373, Syl. ¶ 7, 228 P.3d 394 (2010). White contends the error is structural because it violated his right to make and present his own defense and because it violated his right to counsel. The State did not respond to White's arguments. Instead, it simply argues this court should find any error to be harmless.

White cites *State v. Carter*, 270 Kan. 426, 14 P.3d 1138 (2000), as analogous. In *Carter*, the defendant was charged with premeditated first-degree murder for a shooting during a home invasion. After the jury was impaneled, Carter complained he did not want to proceed with his trial counsel because he disagreed with his counsel's theory of defense. The district court denied his request for new counsel and they proceeded to trial. Although Carter denied his involvement in the charged offenses, his counsel argued the murder was not premeditated, conceding Carter's involvement. On appeal, the Kansas Supreme Court held Carter's counsel's conduct denied Carter the right to counsel and a

15

fair trial when defense counsel imposed a guilt-based defense against Carter's wishes. 270 Kan. at 441.

The State argues *Carter* is distinguishable because, in *Carter*, the defendant told the district court he was not satisfied with his counsel's theory of defense and here, White never expressed dissatisfaction with his counsel's theory of defense. The State's argument is unpersuasive. White did not need to object to his counsel's theory of defense since they were united. However, through counsel, White clearly objected to the district court's decision to give the instruction to the jury because that was not their theory of defense. Though the source of the undesired theory of defense differed in *Carter*, like the defendant in that case, White was saddled with an unwanted instruction that clearly changed his theory of defense. The district court's decision to add this instruction on parental discipline denied White the meaningful opportunity to present his chosen theory of defense to the jury.

Given White's right to control his theory of defense, we find the giving of this instruction was error. Under the constitutional harmless error standard, as the party benefitting from the error—here, a theory of defense instruction the defendant did not want—the State must prove beyond a reasonable doubt the error would not or did not affect the outcome of the trial in light of the record as a whole. *State v. Santos-Vega*, 299 Kan. 11, 24, 321 P.3d 1 (2014). The State's brief fails to adequately address this issue. The State failed to show the district court's decision to give the affirmative defense instruction over White's objection did not affect the outcome of the trial. We find White is entitled to a new trial. With this conclusion, we find it unnecessary to address the other two issues raised by White on appeal.

Reversed and remanded for a new trial.