NOT DESIGNATED FOR PUBLICATION

No. 123,988

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRANDON M. BLACKMON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed January 13, 2023. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Jamie L. Karasek*, assistant district attorney, *Thomas Stanton*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., MALONE, J., and TIMOTHY G. LAHEY, S.J.

LAHEY, J.: Brandon Blackmon was charged with one count of possession of a controlled substance under K.S.A. 2018 Supp. 21-5706(a) after one of the pills found in his car tested positive for methamphetamine. Blackmon's defense was that he had no knowledge the pill contained methamphetamine and he never intended to possess methamphetamine. At trial, Blackmon testified that he purchased the pills believing they were "ecstasy" or "mollies" containing MDMA, which is a different controlled substance. The jury, which was dispersed throughout the courtroom as part of COVID-19 protocols, convicted Blackmon of methamphetamine possession. He raises five issues in this appeal that we address below. We find no reversible error and affirm his conviction.

1

FACTUAL AND PROCEDURAL BACKGROUND

During the evening of February 8, 2019, Deputy Eric DeLaCruz of the Reno County Sheriff's Office was parked and running a stationary radar on US-50. Around 10 p.m., Deputy DeLaCruz observed a black Lincoln SUV heading west. The Lincoln was travelling at 94 miles per hour in a 65-mile-per-hour zone.

Deputy DeLaCruz initiated a traffic stop, and the vehicle pulled over without incident. Deputy DeLaCruz noticed the vehicle had a temporary tag, approached the vehicle, and spoke to the driver, Brandon Blackmon. Blackmon told the deputy that he was heading from Wichita to the Boot Hill Casino in Dodge City. During this initial conversation, Deputy DeLaCruz smelled the odor of raw marijuana and observed what he believed to be a cigarillo filled with marijuana—commonly referred to as a blunt— sticking out of a cup holder in the center console.

Deputy DeLaCruz returned to his patrol vehicle and called for backup. He then went back to the Lincoln and asked Blackmon to join him in the front seat of his patrol car. Blackmon complied and, while the two were sitting in Deputy DeLaCruz' vehicle, the deputy ran Blackmon's license and registration. Deputy DeLaCruz informed Blackmon that he was being detained, placed him in handcuffs, and had Blackmon move to the backseat of the patrol car. Deputy DeLaCruz explained that Blackmon was being detained because his Kansas driver's license was revoked, his Arkansas driver's license was suspended, he possibly had a warrant out of Sedgwick County, the Lincoln smelled like marijuana, the deputy had observed what he believed to be a marijuana-filled cigarillo, and Blackmon's movements suggested he may have been intoxicated.

Deputy Mikel Bohringer arrived on the scene, and both deputies searched Blackmon's vehicle, finding two open vodka bottles in the car, one in the center console

2

and one on the floor in front of the passenger seat. But they did not find the blunt initially observed by Deputy DeLaCruz or any other marijuana. However, the officers found six pills in the center console. The pills were different colors and had various designs. At the time of the discovery, both deputies believed the pills contained ecstasy because, based on their training and experience, it was normal for ecstasy pills to have "[f]un designs, weird imprints, different colors." Ecstasy is chemically known as MDMA.

The State charged Blackmon with possession of a hallucinogenic drug under K.S.A. 2018 Supp. 21-5706(b)(3), (c)(2)(B) and other misdemeanor offenses not related to this appeal. But when the Kansas Bureau of Investigation (KBI) tested two of the pills found in Blackmon's vehicle, no MDMA was present. The KBI found one pill did not contain any controlled substance while the other contained methamphetamine. As a result, the State amended its complaint, charging Blackmon with one count of possession of methamphetamine under K.S.A. 2018 Supp. 21-5706(a), (c)(1).

Blackmon pled not guilty in August 2019, and his trial occurred on February 22, 2021. Because of COVID-19 protocols, the jury was spread throughout the courtroom, with two jurors seated behind the bar and the defense counsel table.

The State called four witnesses. Deputies DeLaCruz and Bohringer testified regarding the stop and search of Blackmon's vehicle. Ray Delahoy, a Hutchinson Police Department evidence custodian, described the pills' chain of custody, and Courtney Feldbauer, a forensic chemist at the KBI, testified about the pills' chemistry. Feldbauer explained that while the pills were initially suspected to be ecstasy, the lab results revealed that one included methamphetamine. Feldbauer testified that the two substances are completely different, with ecstasy being a hallucinogenic and methamphetamine being a central nervous stimulant.

3

Blackmon then testified in his defense. He conceded that he possessed the pills, he knew they were illegal, and explained that he purchased the pills believing they were "ecstasy" or "mollies" containing MDMA. He testified that he had no intention of possessing methamphetamine. He admitted he did not know the "major chemicals or components" in the pills he purchased, testifying that you never "know exactly what you're going to get" and "that's the chance you're taking at the time."

The jury was instructed that it could convict if it found that Blackmon "either knew the identity of the controlled substance, or that the substance was controlled." The prosecutor highlighted that instruction in her rebuttal argument telling the jury that it did not matter if Blackmon intended to possess MDMA or methamphetamine—he was guilty either way. The jury found Blackmon guilty of possession of methamphetamine, and he was sentenced on April 23, 2021. After denying Blackmon's motion for new trial, the district court granted Blackmon's motion to depart and sentenced him to 40 months in the Department of Corrections for the possession of methamphetamine conviction but suspended the sentence and imposed 12 months of probation.

ANALYSIS

The five issues raised in this appeal are: (1) Sufficiency of the evidence; (2) improper jury instruction; (3) prosecutorial error in closing argument; (4) violation of Blackmon's Sixth Amendment right to counsel because of the placement of two jurors near defense counsel table; and (5) cumulative error. The first three issues raised by Blackmon are directly related to his defense that he did not "knowingly" possess methamphetamine because he believed he possessed MDMA, a different illegal substance. The parties agree that resolution of the first three issues largely turns on a legal interpretation of K.S.A. 2018 Supp. 21-5706(a). Blackmon identifies the legal question as "whether K.S.A. 2018 [Supp.] 21-5706(a) requires a knowing culpable mental state regarding *the identity* of the substance possessed or whether generally knowing that a

4

substance is controlled meets the element[s] of the offense." Although he intended to possess the pill containing methamphetamine, Blackmon contends he did not knowingly possess *methamphetamine* because he did not know the pills contained methamphetamine—he believed the pills contained a different controlled substance—MDMA. To be convicted of possession of methamphetamine, Blackmon argues the State must prove he knew the specific substance he possessed was methamphetamine.

I. *Was there sufficient evidence to support Blackmon's conviction of possession of methamphetamine?*

*(a) Knowledge required for possession under K.S.A. 2018 Supp. 21-5706(a)*

This issue involves statutory interpretation, which is a question of law over which this court has unlimited review. *Jarvis v. Department of Revenue*, 312 Kan. 156, 159, 473 P.3d 869 (2020). "All Kansas courts use the same starting point when interpreting statutes: The Legislature's intent controls. To divine that intent, courts examine the language of the provision and apply plain and unambiguous language as written." 312 Kan. at 159. When doing so, courts must give "common words their ordinary meaning." *State v. Ryce*, 303 Kan. 899, 906, 368 P.3d 342 (2016). "If the Legislature's intent is not clear from the language, a court may look to legislative history, background considerations, and canons of construction to help determine legislative intent." *Jarvis*, 312 Kan. at 159.

Blackmon was charged under K.S.A. 2018 Supp. 21-5706(a), titled "Unlawful possession of controlled substances," which provided: "It shall be unlawful for any person to possess any opiates, opium or narcotic drugs, or any stimulant designated in K.S.A. 65-4107(d)(1), (d)(3) or (f)(1), and amendments thereto, or a controlled substance analog thereof." Methamphetamine falls within the substances designated in K.S.A. 2018 Supp. 65-4107(d)(3). With few exceptions, "a culpable mental state is an essential

element of every crime" defined in the Kansas Criminal Code. K.S.A. 2021 Supp. 21-5202(a). But the language of K.S.A. 2018 Supp. 21-5706, on its face, appears silent as to the required mental state for possession of a controlled substance. Although there is no published case analyzing the required mental state for possession of a controlled substance under K.S.A. 21-5706(a), a similar circumstance involving K.S.A. 21-5705, possession of a controlled substance with intent to distribute, was analyzed by the Kansas Supreme Court in *State v. Rizal*, 310 Kan. 199, 445 P.3d 734 (2019).

Rizal owned a gas station in Shawnee, and law enforcement received a tip that she was selling synthetic cannabinoids. Officers discovered packages that later tested positive for the synthetic cannabinoid naphthoylindole, also known as K2. Among other things, the State charged Rizal under Kansas' possession with intent to distribute statute, K.S.A. 2011 Supp. 21-5705(a)(7), which provided: "It shall be unlawful for any person to cultivate, distribute or possess with the intent to distribute" controlled substances. Rizal was convicted, and her conviction was upheld by our court before making its way to the Kansas Supreme Court.

On appeal, Rizal argued the evidence was insufficient to support her conviction because of a mistake of fact—she believed the packets she sold contained lawful incense, not a controlled substance. One of the issues addressed by Rizal was the lack of culpable mental state in K.S.A. 21-5705. While our court found K.S.A. 21-5705 lacked a culpable mental state, the Supreme Court recognized the culpable mental state is "imbedded in the definition of the word 'possession'" in K.S.A. 21-5701(q). 310 Kan. at 206-07. This determination is significant because the same statutory definition is applicable to the possession charge faced by Blackmon.

The term "possession" means "having joint or exclusive control over an item with knowledge of and intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." K.S.A. 2021 Supp.

6

21-5701(q). Next, the statutory definition of "knowingly" provides: "A person acts 'knowingly,' or 'with knowledge,' with respect to the nature of such person's conduct or to circumstances surrounding such person's conduct when such person is aware of the nature of such person's conduct or that the circumstances exist." K.S.A. 2021 Supp. 21-5202(i). The term "nature" means "[a] fundamental quality that distinguishes one thing from the other; the essence of something." Black's Law Dictionary 1238 (11th ed. 2019).

Accordingly, the court explained that "a person must know the essence of the substance possessed; the fundamental quality that distinguishes that substance from another one." 310 Kan. at 207. As such, the ultimate test for K.S.A. 2011 Supp. 21-5705(a) was whether "the defendant had knowledge of the nature of the controlled substance—meaning, that the defendant either knew the identity of the substance or knew that the substance was controlled." 310 Kan. at 208. The court recognized that this interpretation may give rise to mistake-of-fact defenses when a defendant possessed a controlled substance but believed the substance was lawful, stating: "We agree with Rizal that a mistake of fact about the nature of a controlled substance—meaning the actual belief that it is 'some other *lawful* substance' that is not controlled—could negate the knowledge requirement. [Citation omitted.]" (Emphasis added.) *Rizal*, 310 Kan. at 209.

Blackmon first seeks to distinguish *Rizal* because it interprets the distribution statute, K.S.A. 21-5705, rather than the possession statute, K.S.A. 21-5706. But possession is an element of the distribution statute, subject to the same definitions of "possession" and "knowingly" that apply to the possession statute. Thus, we find *Rizal*'s analysis of culpable mental state is applicable to crimes charged under K.S.A. 21-5706(a). The *Rizal* court found the "State must prove the defendant had knowledge of the nature of the controlled substance." 310 Kan. 199, Syl. The "knowledge" requirement for possession "can be established by proving the defendant either knew the identity of the substance *or knew that the substance was controlled.*" (Emphasis added.) 310 Kan. 199, Syl. Ultimately, based on circumstantial evidence, the Supreme Court found that Rizal

7

was aware that the substance was controlled and affirmed her conviction and sentence. 310 Kan. at 210.

Like the defendant in *Rizal*, Blackmon argues that he made a mistake of fact—he thought he was buying pills containing MDMA but "apparently bought at least one pill containing methamphetamine." But the mistake-of-fact defense operates to shield a person from being convicted on the basis of innocent or otherwise lawful behavior. 310 Kan. at 209. Blackmon's actions were undertaken with the knowledge he was buying an illegal controlled substance. Possession of a controlled substance is a general intent crime, and Blackmon intended to and did knowingly possess a controlled substance. See K.S.A. 2021 Supp. 21-5202(i). Any mistake by Blackmon about the specific controlled substance he possessed does not transform possession of methamphetamine into a specific intent crime. Blackmon knowingly possessed a controlled substance, and that establishes the required culpable mental state under K.S.A. 2021 Supp. 21-5706(a).

Blackmon also seeks to distinguish *Rizal* by contending that K.S.A. 2018 Supp. 21-5705(a) prohibits distribution of *any* controlled substance, while K.S.A. 2018 Supp. 21-5706(a) only prohibits possession of the specific controlled substances listed in subsection (a)—many other controlled substances are listed in K.S.A. 2018 Supp. 21-5706(b). He argues that "[b]ecause K.S.A. 2018 Supp. 21-5706 provides divisible offenses related to possession of different types of controlled substances, the state must prove a knowing culpable mental state with regard to the type of controlled substance allegedly possessed." The argument is that to establish the culpable mental state of "knowingly," the State must prove that Blackmon knowingly possessed one of the substances specifically listed in K.S.A. 2018 Supp. 21-5706(a), "any opiates, opium or narcotic drugs, or any stimulant designated in K.S.A. 65-4107(d)(1), (d)(3) or (f)(1)." MDMA is a hallucinogen and is unlawful under K.S.A. 2018 Supp. 21-5706(b).

8

We are unpersuaded by this argument. The "knowing" portion of the culpable mental state for "possession" is the same regardless of the subsection of the statute being applied. The "nature" of the substance, for purposes of determining culpable mental state, is that the substance is controlled in Kansas, and that fundamental nature does not change based on the subsection of the statute in which the controlled substance is listed. A conviction for possession of a controlled substance does not depend on the defendant having specific knowledge of the precise chemical composition of the controlled substance he or she possesses. Knowledge that a substance contains a prohibited controlled substance is sufficient to establish the required culpable mental state. When interpreting the imbedded knowledge requirement in K.S.A. 2018 Supp. 21-5706(a)'s possession definition, we find an individual meets the knowledge requirement if the individual knows the specific chemical substance, or that the substance is controlled. As in *Rizal*, this holding allows for a mistake-of-fact defense if a defendant possessed a controlled substance but believed the substance was lawful. 310 Kan. at 209 (citing *State v. Rosa*, 304 Kan. 429, 437, 371 P.3d 915 [2016]).

### (b) Sufficiency of the evidence

"When reviewing the sufficiency of the evidence," this court must "decide whether, after reviewing all the evidence in a light most favorable to the prosecution, [it is] convinced that a rational fact-finder could have found the defendant guilty beyond a reasonable doubt." *State v. Shields*, 315 Kan. 814, 826, 511 P.3d 931 (2022). Additionally, this court does "not reweigh evidence, resolve evidentiary conflicts, or make witness-credibility determinations." 315 Kan. at 826.

Blackmon argues that there was insufficient evidence to convict him of methamphetamine possession under K.S.A. 2018 Supp. 21-5706(a) because the State did not "present any evidence that [he] *knowingly* controlled *methamphetamine*." He points to the testimony of both deputies that they believed the pills to be MDMA to bolster his own

9

testimony. And because the pills he purchased did not actually contain MDMA, Blackmon argues he could only be convicted of attempted possession of MDMA, a crime not charged by the State.

In his testimony, Blackmon admitted to possession of the pill containing methamphetamine. He also admitted to buying the pills with the knowledge and expectation the pills would contain a controlled substance, MDMA. Though described as a mistake-of-fact defense, Blackmon does not present any innocent or lawful explanation for his possession of methamphetamine, and we note he did not request a mistake-of-fact instruction. A mistake of fact is a defense if it negates the crime's required mental state. K.S.A. 2021 Supp. 21-5207(a). "Although termed a 'defense,' the mistake-of-fact doctrine merely reflects the State's burden to prove every element of the offense: the State cannot convict the defendant if it fails to show that the defendant had the required mental state when committing the crime." *State v. Diaz*, 44 Kan. App. 2d 870, Syl. ¶ 1, 241 P.3d 1018 (2010). Blackmon's "mistake" here does not show that he lacked the required mental state. Instead, by admitting that he believed the pills contained a controlled substance—a belief that was true—he established the required culpable mental state.

Finally, the jury was not obligated to believe Blackmon's claim he did not know the pills had methamphetamine. He first told deputies that the pills were "candy." Circumstantial evidence shows he knew the pills might contain methamphetamine. At trial, he testified he knew he was buying an illegal substance and admitted that it was not possible to be certain regarding the specific chemical composition of the substances purchased. As such, he was aware that he could be receiving methamphetamine and he intended to possess the pills despite that knowledge. Viewing the evidence in the light most favorable to the State, we find the State presented sufficient evidence to establish Blackmon's culpable mental state—the only element challenged by Blackmon.

II. *Did the district court err when it overruled Blackmon's objection to jury instruction nine?*

This court applies a multi-step process to review jury instruction errors. First, this court must determine whether the issue was preserved. *State v. Randle*, 311 Kan. 468, 471, 462 P.3d 624 (2020). Second, reviewing courts must consider "whether the instruction was legally and factually appropriate." 311 Kan. at 471. This court has unlimited review over the first two steps. Third, if this court finds error, then the standard of review depends on whether the party objected at trial. 311 Kan. at 471. If the party objected, then "the State must establish there is no reasonable probability the absence of the error would have changed the verdict." 311 Kan. at 471. If, on the other hand, the party did not object, then this court applies the clear error standard and determines "whether it is 'firmly convinced that the jury would have reached a different verdict had the instruction error not occurred.'" *State v. Williams*, 308 Kan. 1439, 1451, 430 P.3d 448 (2018) (quoting *State v. Williams*, 295 Kan. 506, 516, 286 P.3d 195 [2012]).

*Discussion*

Following the close of evidence, Blackmon objected to jury instruction nine, which provided: "The State must prove that Brandon Blackmon had knowledge of the nature of the controlled substance, that Brandon Blackmon either knew the identity of the substance or that the substance was controlled." Blackmon argued that the instruction was coming from caselaw, was not part of the Pattern Instructions for Kansas (PIK), and was covered by instruction number eight. Instruction eight provided: "A defendant acts knowingly when the defendant is aware of the nature of his conduct that the State complains about or of the circumstances in which he was acting or that his conduct was reasonably certain to cause the result complained about by the State."

11

On appeal, Blackmon first argues that the instruction was not legally appropriate. "To be legally appropriate, the instruction must fairly and accurately state the applicable law." *State v. Wimbley*, 313 Kan. 1029, 1034, 493 P.3d 951 (2021). Blackmon suggests that the law was not fairly and accurately stated because the law came from *Rizal*, which dealt with a different statute, K.S.A. 21-5705, which criminalizes possession with intent to distribute. While Blackmon is correct that the distribution and possession statute punish different crimes, the knowledge requirements of the distribution and possession statutes are coterminous because they arise from the same statutory definitions found in K.S.A. 21-5701(q) and K.S.A. 21-5202(i). Accordingly, the jury instruction was legally appropriate.

Blackmon suggests that the instruction reduces the State's burden by eclipsing the intent element. But Blackmon confuses two different elements of possession—intent and knowledge. Possession of a controlled substance requires intent to exercise control over the substance, with knowledge of the nature of the substance. *State v. Keel*, 302 Kan. 560, Syl. ¶ 1, 357 P.3d 251 (2015). The jury was instructed on this intent to control in instruction six, which reads, in relevant part, "'Possession' means having joint or exclusive control over an item with knowledge of and the intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." Jury instruction nine did not affect the intent section of instruction six. Instead, instruction nine clarified the knowledge requirement set forth in instructions six and eight. It did not reduce the State's burden because regardless of whether Blackmon believed the substance was MDMA, methamphetamine, or something else, the State was required to prove beyond a reasonable doubt that Blackmon intended to control the illicit substance. Furthermore, intent to control was not an issue. Blackmon admitted he intended to have control over the pills—he only challenges the level of knowledge he must have regarding the specific content of the pills. We disagree with Blackmon that instruction nine "gutted" the otherwise appropriate instructions.

12

Blackmon also argues that jury instruction nine was erroneous because it undermined his theory of defense. As authority, Blackmon cites to *State v. White*, 55 Kan. App. 2d 196, 206, 410 P.3d 153 (2017). In *White*, this court explained "'trial courts should not interfere with a defendant's chosen defense theory by giving an instruction which neither party requested and which may undermine defendant's chosen theory.'" 55 Kan. App. 2d at 206 (quoting *State v. Trussell*, 289 Kan. 499, 505, 213 P.3d 1052 [2009]). Here, the State specifically requested jury instruction nine. Following Blackmon's objection, the court asked the State if it was requesting instruction nine, to which the State responded, "Yes, Your Honor."

Blackmon appears to suggest that an instruction is impermissible if it would undermine his defense, even if the instruction is an accurate statement of law. Jury instruction nine did not eliminate any legitimate defense because Blackmon does not claim that he had a lawful substance—he believed he possessed a controlled substance, but not methamphetamine. Blackmon's belief he possessed MDMA is sufficient to establish the culpable mental state for possession of methamphetamine and is not a legitimate defense. We find that the district court did not err by overruling Blackmon's objection to jury instruction nine.

III. *Did the prosecutor err in closing argument by explaining jury instruction nine?*

This court may always review for prosecutorial error regardless of whether a contemporaneous objection is made. *State v. Blevins*, 313 Kan. 413, 428, 485 P.3d 1175 (2021). Accordingly, the issue is properly preserved. This court applies a two-step process for evaluating prosecutorial error claims:

> "'[T]he appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to

a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate "beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict."' [Citations omitted.]" *State v. Timley*, 311 Kan. 944, 949, 469 P.3d 54 (2020).

*Discussion*

A prosecutor commits error by misstating the law. *State v. Watson*, 313 Kan. 170, 179, 484 P.3d 877 (2021). Here, Blackmon's closing argument ended with the following three sentences: "He had no knowledge it was methamphetamine. So ask you find him not guilty. Thank you." In rebuttal, the prosecutor said: "It doesn't matter whether the substance was methamphetamine or MDMA." Furthermore, the prosecutor stated: "I'd ask you draw your attention to jury instruction No. 9. The State must prove that Brandon Blackmon had knowledge of the nature of the controlled substance. That Brandon Blackmon either knew the identity of the controlled substance, or that the substance was controlled." The prosecutor's comments accurately stated the knowledge requirement underlying K.S.A. 2018 Supp. 21-5706(a) and are not a misstatement of the law. We find no prosecutorial error.

IV. *Did the district court abuse its discretion in denying Blackmon's motion for a new trial because two jurors were seated behind Blackmon and defense counsel during the trial?*

On appeal, Blackmon argues that his Sixth Amendment right to counsel was violated because two jurors were seated behind the defense table, thereby hindering his

14

ability to communicate with defense counsel. The State replies that the jurors' location did not amount to a constitutional violation.

*Relevant facts*

Blackmon's jury trial occurred in February 2021. As part of the COVID-19 protocols, jurors were not only seated in the jury box, but were also spread throughout the courtroom. Two jurors were sitting directly somewhere behind the bar. At the close of the State's case-in-chief, defense counsel told the court the following:

> "Judge, I—just because I needed to get the jury out. Just for the record, we're in a very weird situation here with regard to jury placement and stuff. They are directly behind me and my client and which makes conversation very difficult. Passing notes kind of worries me because we—I'm not sure what they can see back there. I just wanted to note for the record two jurors are kind of like right over our shoulders. It's a difficult situation and makes conversation with my client—and that may be something we reconsider as we get further in this process."

The court replied: "Your statement is noted. I will note jurors are spread around the courtroom. There are two or three that are fairly much behind you and Mr. Blackmon. So go ahead." Shortly after, defense counsel moved for a directed verdict, which the court denied, and then the court emptied the courtroom to allow Blackmon and defense counsel to confer about whether Blackmon would testify.

After the trial was complete, Blackmon filed a motion for a new trial. Paragraph seven of the motion reads:

> "The placement of two jurors immediately behind defense counsel and the defendant hampered an already strained relationship and communication with the defendant. There was no way to talk to the client without being overheard by jurors. The passing of written

15

communication was also circumscribed by the worry of the jurors seeing communications that they should be no part of."

At sentencing, the district court denied Blackmon's motion for new trial. The court explained:

"All right. The constitution doesn't guarantee a perfect trial. Certainly that's, I don't believe that is even possible but I think Mr. Blackmon was afforded a fair trial even though we've had to institute different protocols due to the Covid 19 virus so I am denying the motion for new trial."

*Standard of review*

K.S.A. 2021 Supp. 22-3501 provides that "[t]he court on motion of a defendant may grant a new trial to the defendant if required in the interest of justice." This court reviews a district court's denial of a motion for new trial for an abuse of discretion. *State v. Rojas-Marceleno*, 295 Kan. 525, 539, 285 P.3d 361 (2012). "A court abuses its discretion (1) if no reasonable person would take the view it adopted; (2) if it commits a legal error; or (3) if its decision is based on factual findings unsupported by substantial competent evidence in the record." *King v. Casey's General Stores, Inc.*, 57 Kan. App. 2d 392, 400, 450 P.3d 834 (2019). Additionally, this court has unlimited review over constitutional claims. *State v. Vonachen*, 312 Kan. 451, 457, 476 P.3d 774 (2020).

*Discussion*

"The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, the accused shall have the right to the assistance of counsel for his or her defense. The Sixth Amendment right to counsel is made applicable to the states through the Fourteenth Amendment." *State v. Long*, 43 Kan. App. 2d 328, Syl. ¶ 2, 225

16

P.3d 754 (2010). On appeal, Blackmon argues the district court made an error of law by not finding that a Sixth Amendment violation occurred.

Blackmon supports his argument by citing to *Geders v. United States*, 425 U.S. 80, 96 S. Ct. 1330, 47 L. Ed. 2d 592 (1976). There, the trial court ordered Geders to not discuss the case with anyone during a 17-hour overnight recess between Geders' direct examination testimony and the cross-examination the following morning. Though the admonition was based on a concern regarding witness coaching, the United States Supreme Court explained that overnight recesses

> "are often times of intensive work, with tactical decisions to be made and strategies to be reviewed. The lawyer may need to obtain from his client information made relevant by the day's testimony, or he may need to pursue inquiry along lines not fully explored earlier. At the very least, the overnight recess during trial gives the defendant a chance to discuss with counsel the significance of the day's events. Our cases recognize that the role of counsel is important precisely because ordinarily a defendant is ill-equipped to understand and deal with the trial process without a lawyer's guidance." 425 U.S. at 88.

The Court went on to note that concerns about coaching could be allayed through other methods such as cross-examination. 425 U.S. at 90. The Court explained that if a tension emerged between the Sixth Amendment right to counsel and concerns about coaching, then the conflict must be resolved in favor of the right to counsel. 425 U.S. at 91. Accordingly, the Court found that prohibiting a defendant from speaking to counsel about any topic during a 17-hour recess between direct and cross-examination violated the Sixth Amendment. 425 U.S. at 91.

Blackmon also cites to *Perry v. Leeke*, 488 U.S. 272, 109 S. Ct. 594, 102 L. Ed. 2d 624 (1989), for the proposition that prejudice is not required for reversal when the constitutional right to an attorney was violated. In *Perry*, the Court found that the *Geders* rule did not apply to an order directing Perry to not speak with his attorney during a 15-

17

minute afternoon recess between Perry's direct and cross-examination. 488 U.S. at 274, 284. The Court explained:

> "[T]he normal consultation between attorney and client that occurs during an overnight recess would encompass matters that go beyond the content of the defendant's own testimony—matters that the defendant does have a constitutional right to discuss with his lawyer, such as the availability of other witnesses, trial tactics, or even the possibility of negotiating a plea bargain. It is the defendant's right to unrestricted access to his lawyer for advice on a variety of trial-related matters that is controlling in the context of a long recess." 488 U.S. at 284.

Because similar discussions would not occur during a 15-minute recess, the Court concluded that *Geders* was not applicable. *Perry*, 488 U.S. at 284. The Court clarified that if *Geders* applied, then prejudice was not required to show a constitutional violation. *Perry*, 488 U.S. at 280.

Finally, Blackmon cites to *Moore v. Purkett*, 275 F.3d 685 (8th Cir. 2001). In *Moore*, the district court ordered that Moore was not allowed to speak with his attorney, even in a whisper, during the trial proceedings. Though the court allowed Moore to communicate via writing, it was undisputed that Moore was nearly illiterate and unable to communicate his thoughts via writing. Moore was allowed to speak with counsel during recesses. Applying the principles of *Geders* and *Perry* to a prohibition on client-attorney communications during trial, the Eighth Circuit explained that "the Sixth Amendment guarantees a defendant the right to confer with counsel in the courtroom about the broad array of unfolding matters, often requiring immediate responses, that are relevant to the defendant's stake in his defense and the outcome of his trial." *Moore*, 275 F.3d at 688. Furthermore, the court explained that defendants have a right of unrestricted access to counsel unless the defendant is testifying. 275 F.3d at 688. The court concluded:

18

"In our view, the state trial court ran afoul of these principles in prohibiting Moore from talking quietly with his attorney in the courtroom during the trial. Because of Moore's uncontroverted limited writing skills, the trial court's ban on Moore speaking quietly with his attorney effectively prevented Moore from communicating with his attorney at all while court was in session." 275 F.3d at 688-89.

Citing *Perry*, the Eighth Circuit found Moore was actually or constructively denied his right to counsel and granted a new trial without a finding of prejudice. *Moore*, 275 F.3d at 689.

We first note that all of the cases relied upon by Blackmon involve an order by the trial court prohibiting a defendant from communicating with counsel. The district court here made no such order. But Blackmon argues his case is akin to *Moore*. He contends he was impeded from communicating with counsel during trial because of concerns that jurors would overhear any conversation or see any written communication. He suggests that the *effect* of the juror's placement behind the bar was to constructively deny him the right to counsel.

The State replies that neither *Geders*, *Perry*, nor *Moore* are applicable to Blackmon. First, the State correctly argues that *Geders* and *Perry* dealt with prohibitions on attorney communication during recesses or breaks. See *Leerdam v. State*, 891 So.2d 1046, 1049 (Fla. Dist. Ct. App. 2004) (explaining that a "denial of access to counsel during a recess of the character in *Geders* . . . is a per se deprivation of the Sixth Amendment right to effective assistance of counsel, but the denial of access to counsel during a recess of the character in *Perry* . . . is not a constitutional deprivation at all"). Therefore, the instant facts are not controlled by *Geders* or *Perry*. The State argues that Blackmon did not mention the placement of the jurors until after the State's case-in-chief, persuasively suggesting that their location was not an impediment to communication because Blackmon's defense counsel actively participated in the trial by cross-examining

19

the State's witnesses without mentioning to the court that there were communication issues.

Moreover, the State notes that Blackmon did not make a record regarding how far the jurors were from Blackmon and what they could see or hear. The record reveals that Blackmon's counsel explained that the jurors in question were seated "right behind the bar," were "directly behind me and my client," and were "kind of like right over our shoulders." The district court agreed that two or three jurors were "fairly much behind [Blackmon's counsel] and Mr. Blackmon."

Though these comments provide some context for the jurors' location, Blackmon is asking this court to make a supposition that the jurors were sufficiently close to affect Blackmon's constitutional rights. Notably, defense counsel explained that she could not tell if the jurors were close enough to read written communications. At the time she raised the issue, Blackmon's counsel did not claim communication was impossible, just that the placement of the jurors "makes conversation very difficult," suggesting it "may be something we reconsider as we get further in this process." Blackmon's complaint, in his motion for new trial and in this appeal, is different and exponentially more significant than the complaint he presented to the district court during trial. It has blossomed from conversation being "very difficult" at the time of trial to "[t]here was no way to talk to the client without being overheard by jurors." The issue was brought to the district court's attention only at the conclusion of the State's case-in-chief, after all the State's witnesses were done testifying. Blackmon made no request for any specific relief, and he was the only witness who testified after the issue was raised.

The record is devoid of any explanation of the distance between Blackmon and the jurors, and counsel for Blackmon did not point to any specific time when she was unable to actually communicate with Blackmon. "A party asserting error has the burden to designate a record which affirmatively shows prejudicial error in the trial court, and,

20

without such a record, this court presumes the trial court's action was proper." *State v. Goodson*, 281 Kan. 913, Syl. ¶ 3, 135 P.3d 1116 (2006). We presume that the district court, with its knowledge of the particulars of the courtroom and placement of the jurors, found that the jurors were not so close as to prevent Blackmon from communicating with counsel.

Our review of the Sixth Amendment issue is unlimited, so we are not constrained by the limited comments made by the judge when ruling on the motion for new trial. See *State v. Jones*, 290 Kan. 373, 376, 228 P.3d 394 (2010). And it is not the district judge's obligation to develop the record. An adequate factual record is required to conduct meaningful appellate review of an issue. A party challenging the ruling of the district court is responsible for developing an adequate record for appeal. *State v. Carr*, 314 Kan. 744, Syl. ¶ 19, 502 P.3d 511 (2022). The record does not show that whispering was not an option. It does not provide any information about the size of the courtroom, the distance between the gallery seating and counsel table, the location or row in the gallery in which the jurors were seated, and it does not show how far counsel table and chairs were located in front of the gallery seating. There is also no suggestion as to the distance from counsel table to the actual jury box in the courtroom to use as a comparative standard to assist in evaluating the claim. In the end, we are left to guess, based on the subjective assertion by counsel, that the jurors "are kind of like right over our shoulders." We see no basis in the record to determine that the district court committed error in its placement of jurors in the courtroom or otherwise. See *State v. Gutierrez-Fuentes*, 315 Kan. 341, 347, 508 P.3d 378 (2022) ("Fact-finding is simply not the role of appellate courts."); *State v. Kahler*, 307 Kan. 374, 386, 410 P.3d 105 (2018) ("The trial judge has broad discretion in controlling the courtroom proceedings."); *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644, 294 P.3d 287 (2013) ("When facts are necessary to an argument, the record must supply those facts and a party relying on those facts must provide an appellate court with a specific citation to the point in the record where the fact can be verified."); *Sall v. T's, Inc.*, 281 Kan. 1355, 1362, 136 P.3d 471 (2006) ("The

Court of Appeals sits not as a finder of fact but as an appellate court."). We find no abuse of discretion by the district court in denying Blackmon's motion for new trial, and no violation of Blackmon's Sixth Amendment right to communicate with counsel.

V. *Did cumulative error deprive Blackmon of a fair trial?*

When considering whether cumulative error requires reversal, reviewing courts consider "'the errors in the context of the record as a whole,'" the ways in which the trial judge handled the errors, the number and nature of the errors, how the errors are interrelated, and the strength of evidence. *State v. Hirsh*, 310 Kan. 321, 345-46, 446 P.3d 472 (2019). Cumulative error may require reversal if, under the totality of the circumstances, the defendant was substantially prejudiced and denied a fair trial. *State v. George*, 311 Kan. 693, 709, 466 P.3d 469 (2020). Finding no error by the trial court, the cumulative error doctrine does not apply.

Affirmed.

\* \* \*

MALONE, J., concurring in part and dissenting in part: I concur with the majority opinion on all issues except I must reluctantly dissent on the issue about the district court's placement of jurors directly behind the defense table impeding Brandon Blackmon's ability to communicate with his counsel during the trial. Based on the record, I believe the trial judge failed to sufficiently respond to Blackmon's assertion that he could not communicate with counsel after being alerted about the problem. Thus, I would find the district court erred in denying Blackmon's motion for new trial on this issue.

The majority opinion correctly states the facts. As part of the COVID-19 protocols, jurors were spread around the courtroom and two jurors were seated directly

behind the defense table. At the close of the State's case-in-chief, defense counsel told the district court that two jurors "are directly behind me and my client and which makes conversation very difficult. Passing notes kind of worries me because we—I'm not sure what they can see back there." The trial judge noted the objection and acknowledged that "[t]here are two or three [jurors] that are fairly much behind you and Mr. Blackmon."

After the trial was complete, Blackmon's attorney filed a motion for new trial that more specifically asserted:  "There was no way to talk to the client without being overheard by jurors. The passing of written communication was also circumscribed by the worry of the jurors seeing communications that they should be no part of." The trial judge's only response in denying Blackmon's motion for new trial on this issue was that "[t]he constitution doesn't guarantee a perfect trial. . . . I think Mr. Blackmon was afforded a fair trial even though we've had to institute different protocols due to the COVID 19 virus so I am denying the motion for new trial."

I have some concerns about the timeliness of Blackmon's objections and whether he may have waived this issue by not asserting his rights at trial. Blackmon's counsel made no record of the problem until the end of the State's case-in-chief, and even then, counsel was vague about the extent of the communication problem with Blackmon. But I think we can assume it took some time during the trial before counsel realized there was a communication problem, so in the absence of any meaningful response from the judge, I think counsel sufficiently brought the problem to the court's attention. Likewise, I think Blackmon has designated a sufficient record on appeal to show prejudicial error. The problem here is not an insufficient record to support Blackmon's claim—it's the judge's meager response to Blackmon's assertion that he could not communicate with counsel.

Blackmon's motion for new trial asserted that the placement of the jurors precluded any meaningful communication between counsel and Blackmon. The motion asserted there "was no way to talk to the client without being overheard by jurors." The

motion also asserted that Blackmon and his counsel could not pass written notes without worrying about the jurors seeing the communication. The Sixth Amendment to the United States Constitution guarantees a defendant the right to confer with counsel in the courtroom. *Moore v. Purkett*, 275 F.3d 685, 688 (8th Cir. 2001). In *Moore*, the district court ordered the defendant not to speak with his attorney, even in a whisper, during trial proceedings—we have no such order here. But if Blackmon's assertions in his motion for new trial are correct—and the record does not reflect otherwise—then the placement of jurors directly behind the defense table effectively prevented Blackmon from conferring with his counsel during trial and amounted to a Sixth Amendment violation.

The majority "presume[s]" that the district court "found that the jurors were not so close as to prevent Blackmon from communicating with counsel." Slip op. at 20. But that is the problem—the district court never made such a finding. Instead, the district court's only response to Blackmon's motion for new trial on this issue was to say that "[t]he constitution doesn't guarantee a perfect trial." That is the same thing as saying that any error was harmless. But Kansas caselaw establishes that a violation of a defendant's Sixth Amendment right to counsel is structural error and is not subject to harmless error analysis. *State v. Jones*, 290 Kan. 373, Syl. ¶ 7, 228 P.3d 394 (2010).

To me, the trial judge failed to sufficiently respond to Blackmon's assertion that he could not communicate with his counsel after being alerted about the problem. I have a sense the district court could have explained that based on the court's observations at trial and knowledge of the courtroom, Blackmon could communicate with his lawyer during the trial—at least by whispering—but the court never provided this explanation. Instead, the district court's only response to Blackmon's concerns was to agree that jurors were seated directly behind the defense table because of COVID protocols and to say that Blackmon had no right to receive a perfect trial.

24

I am especially sensitive to the trial court's broad discretion in controlling courtroom proceedings and the fact the court was dealing with problems caused by the COVID pandemic in affording Blackmon his right to a jury trial. The worldwide COVID pandemic presented the Kansas judicial branch with unprecedented issues in delivering access to justice to the people of Kansas. The district courts were on the frontline of this extraordinary effort. Judges, court reporters, clerks, court service officers, and other judicial staff made sure that court hearings continued for Kansas citizens, even at great personal sacrifice. The district courts made special accommodations to protect jurors and to conduct jury trials, and there was nothing wrong with the court's protocol of spreading jurors throughout the courtroom provided Blackmon still received a fair trial.

We are stuck with the record we have in this case, and it reflects that Blackmon sufficiently asserted that he was precluded from communicating with his counsel during trial by the placement of two jurors directly behind the defense table. The trial judge did not adequately address this issue to ensure that Blackmon's Sixth Amendment right to counsel was protected. As a result, I would find the district court erred in denying Blackmon's motion for new trial on this issue.